No. 11,323.

## DORAN v. STATE BOARD OF MEDICAL EXAMINERS.

Decided October 5, 1925.   Rehearing denied November 2, 1925.

Proceeding to revoke the license of a physician to practice his profession.   License revoked.

*Affirmed.*
*On Application for Supersedeas.*

1.   PHYSICIANS AND SURGEONS—*Revoking License—Courts.*   In the absence of abuse of discretion of a medical board in revoking the license of a physician, courts are not called upon to pass upon the weight or sufficiency of the testimony upon which the findings of the board are based.

2.   CERTIORARI—*Purpose.*   The object of certiorari is not to settle or determine disputed facts, but to investigate and correct errors of law of a jurisdictional nature, and under the Code, abuse of discretion.

*Error to the District Court of the City and County of Denver, Hon. Henley A. Calvert, Judge.*

Mr. JOHN COEN, Mr. R. L. SAUTER, Mr. CLARENCE L. IRELAND, for plaintiff in error.

Mr. W. L. BOATRIGHT, Attorney General, Mr. CHARLES H. HAINES, Assistant, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE state board of medical examiners has been created by our General Assembly as an administrative body, and invested with power to protect the public health and to control and regulate the practice of medicine in this state.

Among its powers are the granting and revoking of licenses to practice medicine in this state. A license that has been granted may be revoked if the holder is guilty of immoral, unprofessional or dishonorable conduct. No one may lawfully practice medicine in this state without a license from the board or continue to practice after his license has been revoked.

A verified complaint was filed with our state board by Mrs. A. K. Squier charging that Dr. J. E. Doran, to whom a license had been granted by the board to practice his profession in this state, had been guilty of immoral, un-professional and dishonorable conduct therein. The testimony of Mrs. Squier and others was taken in support of the charge and the doctor was present in person and by counsel and he testified as a witness. The board determined that the charges were established and revoked his license. Thereupon Doran filed his petition in the Denver district court for a writ of certiorari, and the same was granted, for a judicial review of the record of the board. Upon the record thus certified the district court refused to interfere with the findings and decision of the board and dismissed the writ, to review which Doran is prosecuting this writ of error.

The specific charge is that the doctor had caused an advertisement to be published in a newspaper in Haxtun, Colorado, containing, among other things, a statement that he had professionally treated and cured Mrs. Squier of ulcers of the stomach, which statements were false and untrue and known to be so by the doctor at the time the advertisement was published and were made for the purpose of misleading and deceiving the people who might read the same and with a view of obtaining patients and fees for himself. Mrs. Squier testified that she had never been a patient of Doran; had never authorized or permitted him to make use of her name as was done in this publication or to reveal her alleged physical condition; that he had never treated her for, or cured her of, ulcers, or any other ailment or disease.

That Dr. Doran caused such advertisement to be published was admitted by him on the stand and he also admitted that he had not treated her for ulcers, but that he had given her treatment of some kind. The doctor's defense in part seems to be that though he had not treated Mrs. Squier for the specific ailment mentioned in the publication, as the one with which she was afflicted, yet he did treat her for some other ailment, but is not to be held responsible for the publication because he did not prepare it. He testifies that he is a graduate of a medical school in Minneapolis, is a specialist in internal medicine, does not use the knife and gives free consultation; that he received a license to practice medicine in the State of Colorado in 1904; that he resides in Minneapolis, maintains an office there but does very little practicing in his home city except that he dispenses medicine from his office in Minneapolis to his patients in other states; that his practice consists principally in traveling about from town to town in several western states including the eastern part of Colorado, and that he advertises in advance the date on which he will be in each town to receive patients at the hotel where he stops; that he did cause this advertisement to be published in a Haxtun newspaper and was present at the hotel mentioned in the advertisement on the date therein mentioned to receive and treat patients; that such part of the advertisement about Mrs. Squier got there without his knowledge and must have been inserted through some mistake of some one in his office, and admits that Mrs. Squier had never given him permission to use her name in any advertisement. There is no evidence in the record that the doctor did not know the contents of the published statement when he gave it to the publisher, or that he made inquiry of any employee in his office in Minneapolis how or why the falsehood was inserted, and there is no evidence by any such employee that he prepared the notice without suggestion or information from the doctor. It is not likely that any one except the doctor himself knew what patients he treated at Haxtun, or at any other place,

or that any one in his office would insert in such an advertisement the name of any patient unless the information or instruction came from the doctor himself. The board, in the absence of any enlightenment by the doctor, could not well assume that an employee acted without instructions. We have set forth the substance of the testimony not that the courts may or can pass upon its sufficiency to sustain the findings of the medical board but to illustrate the character of this physician and the kind of practice in which he was engaged. That such advertisement was false and misleading and was intended and calculated to secure patients and fees for the doctor among the unwary and inexperienced persons suffering from disease is too apparent to need discussion. And that it was made for the purpose of procuring patients and fees for himself is a fair inference. If such conduct is not immoral, dishonorable and unprofessional, we do not know what conduct of a licensed physician would come within the meaning of those words. An elaborate argument of counsel for plaintiff in error as to the meaning of these expressions is made to convince the court that they do not include the false and misleading statements in this advertisement. The board of medical examiners consists of reputable physicians appointed by the governor. They are supposed to know better than laymen the ethics of their profession and what constitutes reprehensible conduct that unfits one to engage or continue in the practice of medicine, but an average layman, we apprehend, would not experience much difficulty in arriving at the conclusion that a doctor who, without authority of his patient, reveals to the public through a newspaper the nature of the patient's disease or falsely states that he has cured him of an ailment, in order to increase his practice and professional fees, is not a proper person to practice the healing art. If the question was one for the courts it is probable that they would not disagree with the findings or conclusion either of laymen or of members of the medical profession. Upon this board of medical examiners was

conferred the power to pass upon such charges. Its juris-
diction to do so is unquestioned. There does not appear
to have been any abuse of discretion on its part. The
courts are not called upon in such a case to pass upon the
weight or sufficiency of the testimony upon which the find-
ings of the board are based. There certainly was testi-
mony to sustain its findings. This and other courts have
repeatedly held that the object of certiorari is not to settle
or determine disputed facts but to investigate and cor-
rect errors of law of jurisdictional nature, and, under the
Code of Procedure, abuse of discretion. In the case of
*State Board of Medical Examiners v. Brown,* 70 Colo. 116,
198 Pac. 274, we said that section 337 of our Code of
Civil Procedure defines 'abuse of discretion" as a failure
by a tribunal regularly to pursue its authority and that
does not include the commission of mere errors of law or
mistakes in the finding of facts.

Since the medical board had jurisdiction both as to the
subject matter of its inquiry and of the person of the
plaintiff in error, and having as the record shows regu-
larly pursued its authority, the district court was right
in dismissing the writ of certiorari and its judgment is,
therefore, affirmed and supersedeas denied.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR
concur.