No. 14,598.

BOARD OF ADJUSTMENT OF THE CITY AND COUNTY OF DENVER *v.* HANDLEY ET AL.
(95 P. [2d] 823)

Decided October 23, 1939. Rehearing denied November 13, 1939.

Mr. Malcolm Lindsey, Mr. Robert J. Kirschwing, Mr. David H. Morris, for plaintiff in error.

Mr. George R. Armstrong, Mr. Christopher O'Neill, for defendants in error.

*In Department.*

Mr. Justice Young delivered the opinion of the court.

On March 13, 1939, Sigman and Burkhardt, who were the owners of five lots located at 1463 York street in the city of Denver which had improvements thereon consisting of a large brick and cement building, a part of which was one story and a portion two stories, high, formerly occupied by the Mountain States Telephone and Telegraph Company as a telephone exchange, applied to the building inspector of the City and County

of Denver for a permit to operate a bowling alley in the building. The inspector denied the permit for the reason that the building was located in a Residence C zone and the law did not vest in him any discretion to vary the regulations in such case. An appeal was taken from the ruling of the inspector to the Board of Adjustment as provided by the city charter and ordinances relative to zoning. The Board of Adjustment, in pursuance of what are alleged to be its discretionary powers vested in it by law, granted the permit upon certain conditions therein set forth. Thereafter the petitioners herein sued out a writ of certiorari from the district court to review the findings of the board. The trial court reversed the ruling of the board upon the grounds, (a) That the Board of Adjustment exceeded its jurisdiction in granting said permit and, (b) That the Board of Adjustment grossly abused its discretion in granting said permit. The board prosecutes a writ of error in this court and by appropriate assignments raises the question whether the findings and judgment of the court holding the permit granted by the Board of Adjustment null and void, are proper on the record as submitted, within the scope of the review permitted by the code sections on certiorari.

The pertinent provisions of the Code of Civil Procedure with respect to certiorari are as follows:

"§331. The writ of certiorari may be denominated the writ of review.

"§332. The writ may be granted on application by any court of record, or upon the order of any judge thereof. The writ shall be granted in all cases where an inferior tribunal, board or officer exercising judicial functions, has exceeded the jurisdiction or greatly abused the discretion of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy.

§338. The review upon the writ shall not be extended further than to determine whether the inferior tribunal,

board or officer has regularly pursued the authority of such tribunal, board or officer." '35 C. S. A., vol. 1, c. 29.

■ As we view the matter there are but two questions that require determination: Did the board exceed its jurisdiction in granting the permit? and, Did it grossly abuse its discretion in doing so? The district court specifically found that the board had no jurisdiction to grant the permit and that it grossly abused its discretion in doing so. In *County Court v. People ex rel.*, 55 Colo., 258, 133 Pac. 752, we said: "It is elementary that when a writ of this character is granted upon a proper petition, and the inferior tribunal certifies its record in response thereto, the limit of the power of the reviewing court is to ascertain from that record alone whether the inferior tribunal regularly pursued its authority, and thereupon pronounce judgment accordingly. §337 Code Civil Proceed., 1908, *County Court v. Eagle Rock Co.*, 50 Colo. 365, 115 Pac. 706; *Morefield v. Koehn,* 53 Colo. 367, 127 Pac. 234."

The record discloses that a large number of property owners in the vicinity of the premises involved filed their written protest to the granting of a permit to operate a bowling alley in the old telephone building. A plat filed with the record discloses that the building faces easterly, that it extends from York street on the east to the alleyway on the west, that the lots immediately adjacent to the building on the north face East Colfax avenue, that these lots are occupied by three store buildings, one of which contains a dry cleaning and dyeing plant. The record discloses that the Board of Adjustment met March 21, 1939. The applicants for the permit were present in person and represented by attorney. Thirteen protestants were present in person or by representatives. The minutes of the board contain the following recitals:

"Facts: The Board having heard and examined witnesses with reference to the case, having heard all interested persons in so far as they desired to be heard,

and having made a personal inspection of the premises and being fully advised finds the facts to be as follows:

"1. That the premises under consideration consists of a large one and two story building of brick and cement construction formerly used by the Mountain States Telephone Company as a telephone exchange, known as the 'York Exchange'.

"2. That the building is located on a lot having a frontage of 87½ feet on York Street and extending back to the public alley between York Street and Gaylord Street, the north line of said lot being distant 100 feet south of the south line of Colfax Avenue.

"3. That the premises under consideration is located in a Residence "C" zone and is contiguous to a Business "C" Zone, the zone line separating the two zones being the north lot line of said premises.

"4. That the Residence "C" Zone extends south along York Street for several blocks and the Business "C" Zone extends in an easterly and westerly direction along Colfax Avenue for many blocks.

"5. That the Business "C" Zone contiguous to applicant's premises is improved with retail store buildings, filling station, public garages, and similar uses, and there is a store building and dry cleaning and dyeing plant directly north of said premises.

"6. South and west of said premises and extending for several blocks the lots are improved with residences, many of which have been converted into rooming houses and apartment houses, and the east side of York Street between the business zone and E. 14th Avenue is improved with similar uses.

"7. That the present building which has been used by the Mountain States Telephone and Telegraph Company, as a telephone exchange and which was designed for such use and was erected before the passage of the Zoning Ordinance, is not suited for residence use on account of its construction and design, and the conversion of same into a residence use would be impractica-

ble, and to compel the present owners to remodel said building for such use would result in unnecessary hardship to said applicants who are the present owners of the premises.

"8. That the premises in question is located contiguous to a business zone which is improved with buildings used for business purposes, and is not suited for a Residence "C" Zone use.

"9. That applicants propose to remodel said building and to install therein bowling alleys and also to install sound proofing in said building.

"10. That applicants also propose to provide a parking lot in the immediate neighborhood for the use of patrons of the proposed bowling alley in order to relieve the traffic situation on York Street between Colfax Avenue and E. 14th Avenue.

"11. That in the judgment of the Board of Adjustment, the conversion of applicants' premises into a bowling alley as proposed in the instant case will not be detrimental and injurious to adjacent and neighboring properties, and owing to special conditions due to the location of said premises and the design and construction of same, a literal enforcement of the provisions of the zoning ordinance will result in unnecessary hardship to said applicants.

"12. That the granting of a permit to said applicants to maintain in said premises a bowling alley will not be contrary to the intent and purposes of the zoning regulations in the promotion and preservation of the public health, safety, best interests, and general welfare of the inhabitants of the district under consideration, and of the inhabitants of the City and County of Denver.

"Action of Board:

"A motion by Mr. Towers, duly seconded, that the application for a permit to maintain in a building located in a Residence "C" Zone and contiguous to a Business "C" Zone, a bowling alley be approved, subject to the following conditions, viz:

"1. That applicants are to install soundproof bowling alleys and to soundproof the present building.

"2. That applicants are to brick up and close the present windows on the west wall adjacent to the alley between York Street and Gaylord Street.

"3. That applicants are to provide parking facilities in the neighborhood for patrons' cars, and that a resolution approving said application be made a part of the record, was adopted by the following vote:

"For the motion and resolution: Coykendall, Kelley, Sowle, Towers. Against the motion and resolution: "Eppich.

"The Resolution:

"Whereas; The applicants, Jake Burkhardt and Morris Sigman, filed on March 13th, 1939 an application for a permit to remodel and convert a building located in a Residence "C" Zone, and formerly used as a telephone exchange into a bowling alley, and

"Whereas; said application having been filed by the said Jake Burkhardt and Morris Sigman, a public notice having been given, and a public hearing having been held, at which hearing all interested persons desiring to be heard, were heard, now

"Therefore be it Resolved: That the application for a permit to remodel and convert the premises known as 1463 York Street into a bowling alley be and the same is hereby approved, subject to certain conditions as hereinabove set forth under 'Action of Board', and that the Chief Building Inspector be so advised."

Section 7 of the amendment to the charter of the City and County of Denver adopted May 15, 1933, which is pertinent to this case is as follows:

"The Council may provide for the appointment of a Board of Adjustment, and in the regulations and restrictions adopted pursuant to the authority of this amendment, may provide that the said Board of Adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special excep-

tions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained. * * *

"The Board of Adjustment shall have the following powers: * * *

"(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done. * * *"

This section of the charter provides for the appointment of the Board of Adjustment by the council. It provides that the council may adopt regulations and restrictions pursuant to the charter authority and that the Board of Adjustment, subject to such conditions and safeguards as the council sees fit to impose, may make exceptions to the terms of the ordinance in harmony with its general purpose and intent. Authority is given for doing this in accordance with either general or specific rules that may be contained in the ordinance. This charter provision is but a recognition of the difficulty if not the impossibility of setting forth hard and fast provisions with respect to given districts without providing for exceptions where a universal rule would work such hardship on the property owner as to amount to an unreasonable invasion of his property rights. Subsection 3 of section 7 of the above quoted charter provision clearly indicates a charter recognition of the fact that in any zoning operation there must be a reasonable relationship between the public good and the hardships imposed upon individual property owners. There may be a situation existing, such as in the instant case, where the building was in existence and used for business purposes before the zoning restrictions were adopted, where the building may be put to uses for which it is adapted and when so used have a large value, but if required

to be used for a purpose for which it is not fitted, its value will be depreciated to such an extent as to constitute an invasion of individual property rights not warranted by the advantages flowing therefrom to the public and to the property owners in the vicinity.

██ ██ It is to be borne in mind that restrictions, authorized by zoning ordinances, are an exercise of the police power and that their inevitable result is to limit the uses to which the owners of property may devote it. In many cases that arise the owner complains that the action of the zoning authority in restricting the use of property has unreasonably invaded his property rights. In the instant case the complaint comes from neighboring property owners who insist that the rights of the owners of the building involved have not been sufficiently restricted—that further invasion than that determined by the zoning authority should be made in their interest—that such restriction should extend even to prohibiting its use for bowling alley purposes. We need not, and do not, determine that under no circumstances on review of a record in a proceeding in certiorari might a court find that a zoning authority had grossly abused its discretion by failing to restrict an owner in the use of his property, but in order so to find the record should clearly show such abuse when the complaint is made by those who seek a benefit to their own properties by the imposition of restrictions on another's use of his property. Particularly is this true when, as here, the property sought to be restricted in use adjoins other business property and was in existence and used for business purposes when the zoning law and the zone classification came into existence.

██ Having held in *County Court v. People ex rel.,* *supra,* that "the limit of the power of the reviewing court is to ascertain from the record [the record certified] alone, whether the inferior tribunal regularly pursued its authority," we limit our judicial notice to what is contained in the record and in accordance with sec-

tions of the Code of Civil Procedure supra, and cases construing them, base our decision on the record before us.

We conclude and hold that, under the applicable law, the Board of Adjustment had jurisdiction to hear the appeal and to make the exception if it determined such an exception to be necessary in the interest of carrying out the spirit of the zoning ordinance and in furtherance of substantial justice; and that there is no such abuse of discretion shown in the record as to authorize a court to set aside the order of the board directing the granting of the permit upon the conditions specified by it.

The judgment is reversed and the cause remanded with instructions to enter judgment in favor of the respondents.

Mr. Chief Justice Hilliard and Mr. Justice Knous concur.