## No. 16,646.

JARRETT ET AL. *v.* CRUSE, DIRECTOR OF REVENUE.
(185 P. [2d] 787)

Decided October 6, 1947.

Mr. CLARENCE L. IRELAND, for plaintiffs in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. CLARENCE L. BARTHOLIC, Assistant, Mr. CHARLES F. CORY, Assistant, for defendant in error.

MR. JUSTICE HAYS delivered the opinion of the court.

THE legislature by the enactment of section 5, chapter 177, Session Laws 1943, authorized the imposition of a tax equivalent to two per cent of the value of services rendered or performed by persons engaging in certain businesses, including "machine shops."

Pursuant to the authority vested in him, defendant in error, hereafter designated as director, imposed a tax

April 26, 1944, upon the business of defendant in error, to whom we hereafter refer as Jarrett, in the sum of $1,708.13. Jarrett, pursuant to the provisions of the above-mentioned act, filed a petition and protest to said assessment, and demanded a hearing before the director, claiming that his business and the services rendered, were exempt therefrom. The matter was tried before said director upon a stipulation of facts, in which appears the following:

"That the Jarrett Company is a sub-contractor of the Aircraft Mechanics, Inc., a Colorado corporation, located at Colorado Springs, Colorado, hereinafter known as the Aircraft Company;

"That said Aircraft Company is and has been during all times in question engaged in manufacturing and assembling parts for airplane companies located outside of the State of Colorado;

"That said Aircraft Company secures its raw materials consisting mostly of steel and steel alloys from steel mills outside of the State of Colorado and located in the eastern part of the United States, which are shipped to the said Aircraft Company at Colorado Springs, Colorado, for the sole and only purpose and use of being forged and casted into parts for airplane companies located outside of the State of Colorado, and after said steel is so forged and casted as aforesaid by said Aircraft Company said forgings or castings are then delivered by said Aircraft Company to said Jarrett Company and other firms engaged in a similar work for the purpose of having said Jarrett Company and other firms perform thereupon certain milling services and for the further purpose of fitting and assembling said parts together. Thereafter said parts, when they have been milled, fitted, and assembled together, are re-delivered to the said Aircraft Company and then by the said Aircraft Company incorporated into parts which it is now and has been manufacturing for said airplane companies located outside of the State of Colorado;

"That the total cost of the raw materials so used in said operations is a very small part of the finished article which the said Aircraft Company eventually delivers to said airplane companies;

"That all of the operations so performed by said Jarrett Company are performed on new materials designed and intended and solely used for the purpose of becoming a part of a completed manufactured item, and that for the purpose of milling and fitting together and assembling the parts delivered to the Jarrett Company, the Aircraft Company furnishes to said Jarrett Company certain dies and jigs, either manufactured and built by said Aircraft Company or by said airplane companies for which it manufactures the parts in question; that the purpose of said dies and jigs is to facilitate and make certain that the parts so milled, fitted, and assembled by the Jarrett Company conform to an exact pattern and to exact measurements furnished by the out of state airplane companies for whom said parts are manufactured; that the parts so milled, fitted, and assembled by the Jarrett Company are all incorporated in the parts manufactured by the Aircraft Company for delivery to out of state airplane companies and that none of the parts are used or sold or delivered to any one else in the State of Colorado; that the Jarrett Company does not perform any repair work of any kind or character for the Aircraft Company or any other operations except as above stated.

"The Director of Revenue contends that the Jarrett Company is obligated to pay to the State of Colorado a tax equivalent to two per cent of the value of the services rendered by the Jarrett Company to the Aircraft Company under Paragraph (c) of Section 5, of the Public Revenue Service Tax Act, as a company engaged in the business of operating a machine shop; that the cost of the services rendered or performed by the Jarrett Company do not, directly or indirectly, enter into or become a part of the tangible personal property which is

subject to the retail sales tax in the State of Colorado.

"The Jarrett Company, on the other hand, contend that the services performed for the Aircraft Company are not subject to assessment for service tax as provided for in the Public Revenue Service Tax Act as now in force and effect for the reason that the Jarrett Company is engaged exclusively in the business of manufacturing as a sub-contractor of the Aircraft Company and is not engaged in the business of a machine shop as that term is used in the Public Revenue Service Tax Act.

"The Jarrett Company, for the purpose of determining whether or not a service tax is due upon the work performed, contends that said Service Tax Act must be read together with the Sales Tax Act, which specifically provides that manufacturing is exempt.

"The Jarrett Company further contends that under facts as herein stipulated it is exempt from payment of said service tax for the further reason that the taxes so assessed are an unconstitutional burden on interstate commerce and prohibited by the Federal Constitution."

At the hearing before the Director of Revenue the additional stipulation was entered into:

"The material which the company uses is allocated by the United States Government to the Aircraft Mechanics, Inc. It purchased the same under strict priority and turns it all over to Jarrett Company for the purpose of performing the contracts. When the work is done the parts are returned to Aircraft Mechanics, Inc., for further work or assembly. Aircraft Mechanics, Inc., does business with airplane companies all over the United States, having contracts with the different airplane companies.

"The items made by Aircraft Mechanics, Inc., are made out of raw steel, either forged by Aircraft Mechanics, Inc., or some other company, and then sent out to plaintiffs or other companies for assembling and drilling holes, etc. After the parts are shipped back to Aircraft Mechanics, Inc., they are forged and assembled with

other parts and the whole shipped to airplane companies out of the state. All sales are out of the State of Colorado, no sale being made to an ultimate consumer in the state."

Thereupon, the following findings and decision of the director were entered, to wit:

"Jarrett is engaged in performing machine shop services for Aircraft which is subject to the 2% tax imposed on the value of such services by Section 5 (c) of the Service Tax Act of 1943. Aircraft collects no service tax nor sales tax on the articles on which Jarrett has performed the taxable services. The work performed by Jarrett is not performed for the United States, and is no part of interstate commerce, and does not fall within any of the limitations against the imposition of an excise tax on interstate commerce.

"It was stated on behalf of Jarrett that there was no objection to the audit and assessment as made; that the assessment was based on figures taken from the books of Jarrett; and, that the amount of tax was not disputed; and, that Jarrett either owed all of the tax as imposed or nothing.

"In view of the determination hereinbefore made Jarrett will be required to pay the tax as assessed together with interest thereon to date of payment. The corrected assessment, including the interest due thereon, is enclosed herewith and made a part hereof, and Jarrett is required to pay the same under the statute within thirty (30) days hereof."

Jarrett, being dissatisfied with the findings and decision of the director, brought this action in the district court of the City and County of Denver under Rule 106 (a) (4), R.C.P. to review the same. At the trial before the district court the following additional stipulation was entered into:

"On the 26th day of June, 1945, the matter came on for hearing before the Hon. Joseph J. Walsh, Judge of the District Court, plaintiffs appearing by Clarence L.

Ireland, and the defendant appearing by George Thomas, Assistant Attorney General.

"Mr. Ireland made the following statement:

" 'There is one place in this stipulation, and I talked to Mr. Thomas about it, that there may be some ambiguity, and that is this statement:

" ' "That the parts so milled, fitted, and assembled by the Jarrett Company are all incorporated in the parts manufactured by the Aircraft Company for delivery to out of state airplane companies and that none of the parts are used or sold or delivered to any one else in the State of Colorado;"

" 'It may be taken to read that those deliveries are made to airplane companies in the State of Colorado. It was intended to state that the only deliveries are from Aircraft to Jarrett and from Jarrett to Aircraft Mechanics, then these articles that are manufactured and completed by the Aircraft Mechanics, Inc., are shipped by bill of lading to these out of state airplane companies, and none of the deliveries are made to airplane companies in the State of Colorado, and I would like the record to clear that up with a stipulation to the effect that it is intended by that statement to state that the deliveries are made outside of the State of Colorado to the airplane companies for whom these parts are manufactured.'

"Mr. Thomas made the following statement: 'I have no objection to a modification of the stipulation setting forth who makes the shipment into Colorado and to whom the parts are shipped outside of Colorado so as to set up the true picture of the flow of this material through the state. But I would also like the stipulation to be modified by specifying who has title to the goods while they are in transit and also by setting forth the fact that the operations performed on those goods or materials were performed by the Jarrett Company at its plant or shops in the State of Colorado.'

"Mr. Ireland replied: 'I have no objection to stating

that the work performed by the Jarrett Company was performed at Colorado Springs at its plant in Colorado and the facts, as I understand them, are that the property is the property of the Aircraft Mechanics until it is delivered to California, or Kansas, or wherever they may be shipped.' "

Thereupon the district court found all the issues joined in favor of the director and against Jarrett, and ratified and affirmed in all respects the findings and decision of the director.

As grounds for reversing said judgment and findings, Jarrett contends in substance that he is exempt from the payment of service taxes because he is engaged in the manufacturing business and not in machine shop business; that the services rendered are not subject to assessment under the act; that the value of the services were an integral part of the costs of a manufactured article; that the articles were not sold to an ultimate consumer in Colorado; and that any service tax paid would create a burden upon interstate commerce.

All the above contentions were fully argued to, and overruled by, the director and the trial court.

Our labors are considerably simplified by the fact that pursuant to the rule under which this action was brought, we are limited to questions of jurisdiction and abuse of discretion. The rule expressly provides: "Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion." We considered this rule in *Hawkins v. Hunt,* 113 Colo. 468, 470, 160 P. (2d) 357, where Justice Alter, speaking for the court, said: "Under the appropriate rule we are limited to a determination of questions of jurisdiction and abuse of discretion."

By section 3 of the act it is made "the duty of the director to determine the question of exemption, subject to review by the courts, as hereinafter provided."

In conformity with the provisions of the act, Jarrett invoked the jurisdiction of the director and de-

manded a determination by him as to whether or not the services involved herein were within the purview of the act. After having invoked that jurisdiction, he cannot now be heard to say that the director did not have jurisdiction to determine the questions presented. A similar question was before us in *Bjork v. Board of Trustees,* 96 Colo. 334, 43 P. (2d) 999. The statute there considered authorized the board of trustees of the firemen's pension fund to "hear and decide all applications for relief or pensions under this act." Bjork applied to the board for a pension, which was denied. He then claimed that the board did not have jurisdiction, and had abused its discretion. Speaking through Justice Hilliard we said: "It was in recognition of the jurisdiction of the board of trustees, and its powers and duties, that petitioner made application to it for retirement and pension. Indeed, it was only to that agency he could apply. Unless that board, moved by petitioner's appeal, should act favorably, or was judicially required to so act, petitioner stood remediless. The board, as we have seen, determined that petitioner did not suffer injury in line of duty. That determination, subject only to inquiry by the court as to whether, the record considered, the board had abused its discretion, was conclusive. The court of primal jurisdiction, scrutinizing the record in the light of challenge by petitioner, perceived no abuse of discretion. In the absence of that, or some equivalent finding, the court was powerless to grant the writ."

In *Bedwell v. Board,* 114 Colo. 475, 166 P. (2d) 994, the Bjork case was cited and followed.

The function and purpose of writs of certiorari or writs in the nature thereof, has many times been stated, and repetition thereof is unnecessary herein. It will suffice to cite a few of the pertinent decisions. *Morefield v. Koehn,* 53 Colo. 367, 127 Pac. 234; *State Board v. Noble,* 65 Colo. 410, 177 Pac. 141 (Cited in notes 54 A.L.R. 1505, 82 A.L.R. 1184); *Doran v. State Board,*

78 Colo. 153, 240 Pac. 335; *State Board v. Spears,* 79 Colo. 588, 247 P.: (2d) 563, 54 A.L.R. 1498; *State Civil Service Commission v. Cummings,* 83 Colo. 379, 265 Pac. 687; *Board of Adjustment v. Handley,* 105 Colo. 180, 95 P. (2d) 823; *Carpenter, Director of Revenue v. People,* ex rel., 112 Colo. 151, 148 P. (2d) 371.

 The case last above cited involved the construction of paragraph (c), section 5, of the act, being the section here under consideration. The question arose as to whether or not Cusack, the relator therein, was conducting the business of "Advertising service agency," within the meaning of those words as used in the act. The present controversy involves the construction of the words "machine shop" and the question as to whether or not Jarrett conducted a "machine shop" within the meaning of those words as used in the statute. We expressly held, speaking through Justice Burke, that the question whether the relator was conducting an "advertising service agency" was one of fact, and that if there was any evidence to support the conclusion and finding of the director of revenue, that the same would not be disturbed on review by this court.

In the instant case the director found, and the trial court sustained the finding, that Jarrett was conducting a "machine shop" within the purview of the service tax act, and that services rendered in connection therewith were taxable. The director made the further finding that, "The work performed by Jarrett is not performed for the United States, and is no part of interstate commerce, and does not fall within any of the limitations against the imposition of an excise tax on interstate commerce." There is ample evidence to support such findings.

The judgment is affirmed.

MR. JUSTICE STONE and MR. JUSTICE JACKSON dissent.

MR. JUSTICE STONE dissenting.

This case involves only a question of law, to wit: Whether the service tax of two per cent of the value of services rendered, under section 5 (c), chapter 177, S.L. 1943, is properly assessed in the case of a resident machine shop operator where his services are wholly rendered under contract with a manufacturer whereby they become part of the process of manufacture of chattels which process is completed without the state of Colorado.

There is no contention that the court lacked jurisdiction, and so a discussion of that subject seems unnecessary. Since the pertinent facts were stipulated before the director and the trial court, there is no issue of fact involved as in the case of *Carpenter, Director of Revenue v. People ex rel.,* 112 Colo. 151, 148 P. (2d) 371, and the other authorities cited in the majority opinion. If the director erred in his conclusions of law, his conclusions are subject to review in the courts.

From a reading of section 5 (c) of the Service Tax Act, it appears that the many services there included as subject to service tax are all services which normally are not performed as a step in the process of the manufacture of chattels, but are either services normally rendered to the person, as in barber shops or banks, or services which normally are performed on existing chattels. While such is the general nature of the services mentioned in that paragraph, still many of them may at times be rendered in connection with the manufacture of new chattels. In the instant case that is true of the machine shop. It might equally well be true in the case of laundries, automobile paint shops, blacksmith shops, cabinet shops, commercial printing shops, and several other of the businesses mentioned in the paragraph. When such services are rendered as part of the process of manufacture of a chattel, we are challenged by the exemption set up in section 3, to wit: "Services rendered or performed as herein defined to a person engaged in * * * selling tangible personal property subject

to a retail sales tax, provided that the cost of such services, directly or indirectly, enter into and become a part of the charges to the ultimate user or consumer, shall be exempt."

Patently, the cost of the services rendered by petitioner in his machine shop entered into and became a part of the charges to the ultimate user or purchaser of the finished chattel. While the services were not rendered immediately to the person engaged in selling the personal property, they were rendered mediately to him, and while the chattels so manufactured in this case apparently were not subject to retail sales tax in Colorado, they were chattels which would be "subject to retail sales tax," and in my opinion, it was not the intention of the legislature to limit the exemption to services in connection with the manufacture of chattels to those for sale within the state of Colorado, but rather by the clause, "subject to retail sales tax," to help identify the type of service which was exempt from the service tax.

By the majority opinion the imposition of a tax on such services rendered in connection with the manufacture of chattels is made dependent on the place of their ultimate sale which, in most cases, would be impossible of determination, and, in my opinion, the legislature could not have intended to place such a burden upon the taxpayer. Further, the imposition of a service tax on any part of the process of manufacture of chattels in Colorado for sale without the state, constitutes a handicap on Colorado industry in its competition with manufacturers from other states, and this could hardly have been the legislative intent.

Accordingly, I believe the judgment should be reversed.

MR. JUSTICE JACKSON joins in this dissenting opinion.