No. 16,145.

STATE CIVIL SERVICE COMMISSION ET AL. *v*. HAZLETT.

(201 P. [2d] 616)

Decided December 20, 1948. Rehearing denied January 10, 1949.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Mr. Frank A. Wachob, Assistant, Mr. Donald H. Meyer, Assistant, for plaintiffs in error.

Mr. Edwin P. Van Cise, Mr. Philip S. Van Cise, for defendant in error.

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

Defendant in error William L. Hazlett, to whom we hereinafter refer as respondent, was duly appointed state bank commissioner in June, 1946, and served in that capacity until his suspension March 12, 1948. The position of state bank commissioner is within the classified civil service of the state of Colorado and is subject to the Constitution, laws, rules and regulations applicable to civil service employees of the state. Under the provisions of section 13, article XII, of the Constitution, persons in such classified service are entitled to hold their respective positions during efficient service. The power of removal from such service is vested exclusively by the above section in the Civil Service Commission and can be exercised "only upon written charges" and after an opportunity afforded respondent to be heard.

Pursuant to said constitutional provision, written charges were filed against respondent and a hearing thereon had, at which respondent appeared in person and by counsel. Following this hearing, and in due course, findings were made, the charges sustained, and an order entered by the commission removing respondent from the classified service of the state.

The findings of the commission are as follows:

"1. That at the time of filing the charges, the. Respondent, William L. Hazlett, was the. duly appointed, qualified, and acting State Bank· Commissioner of the State of Colorado; that said position of State Bank Commissioner is within the classified Civil Service of the State of Colorado and that the said William L. Hazlett is a person within the classified service of the State of Colorado and amendable to ,and subject to the laws, rules, and regulations applicable to Civil Service employees of the State of Colorado.

"2. That on December 3, 1947, the said William L. Hazlett made requisition upon this Commission for the name of a person upon the eligible list for appointment to the position of Bank Examiner I. That thereafter, and on or about February 10, 1948, this Commission certified William J. Milner to said Respondent as eligible for such appointment; that the said William J. Milner presented himself to the Respondent for appointment to the position covered by Respondent's requisition; ·that the said Respondent failed and refused to appoint ,the said William J. Milner as Bank Examiner I or at all and, that said Respondent as the appointing authority; did not offer an objection in writing based on Article V, Section 4, or at all, all in violation of Article VIII, Rules and Regulations of this Commission.

"3. That on December 3, 1947, the said William. L. Hazlett made requisition upon this Commission for the name of a person upon the eligible list for appointment to the position of Bank Examiner I. That thereafter and on or about February 6, 1948, this Commission certified James M. Mathes to said Respondent as eligible for such appointment; that the said James M. Mathes presented himself to the Respondent for appointment to the· position covered by Respondent's requisition; that the said Respondent failed and refused to appoint the said James M. Mathes as Bank Examiner I or at all and that said Respondent as the appointing authority did not offer an objection in writing based on Article V, Section 4, or at

.all, all in violation of Article VIII, Rules and Regulations of this Commission.

"4. Further the majority of the Commission finds from the evidence that the Respondent, William L. Hazlett, has not rendered efficient service in his capacity as State Bank Commissioner, in that it appears from the evidence:

"(a) That in the year 1946 and during the tenure of his office, he failed and neglected to examine or cause to be examined at least twice each year all of the books, records, papers, assets and liabilities of every kind and character owned by or relating to every bank licensed or chartered to do business in the State of Colorado;

"(b) That in the year 1947 and during the tenure of his office, he failed and neglected to examine or cause to be examined at least twice each year all of the books, records, papers, assets and liabilities of every kind and character owned by or relating to every bank licensed or chartered to do business in the State of Colorado;

"(c) That the evidence shows that in the year 1946 and 1947 and during the tenure of his office, Respondent failed and neglected to accept an examination or report of the Federal Deposit Insurance Corporation in lieu of the examination or report required by Chapter 18, 1935 Colorado Statutes Annotated, on a great number of banks licensed or chartered to do business in the State of Colorado, and as a result thereof, said banks and the books, records, papers, assets and liabilities of every kind, and character owned by said banks, were not examined by the office of the State Bank Commissioner during said years 1946 and 1947;

"(d) That in the year 1946 and during the tenure of his office, Respondent failed and neglected to examine or cause to be examined at least once each year, all finance companies and credit unions licensed or authorized to do business in the State of Colorado, contrary to the law in such case made and provided.

"(e) That in the year 1947, and during the tenure

of his office, Respondent failed and neglected to examine or cause to be examined at least once each year, all finance companies and credit unions licensed or authorized to do business in the State of Colorado, contrary to the law in such case made and provided.

"(f) That the evidence shows that in the granting or refusal to grant certificates authorizing the opening and operating of banking institutions within the State of Colorado, the Respondent was partial, arbitrary and capricious, all contrary to the statute in such case made and provided;

"(g) That the evidence shows that the Respondent was uncooperative with the Civil Service Commission, used abusive and threatening language to Commissioner James H. Steele and failed and refused to recognize the rules and regulations of the Civil Service Commission relative to the appointment of persons on the eligible list to positions in the office of the State Bank Commissioner.

"5. That the good of the service would be best served by the removal of the said William L. Hazlett from the office of State Bank Commissioner."

Subsequent to these findings and order of the commission, respondent brought this action in the nature of certiorari in the district court pursuant to Rule 106 (a) (4), R.C.P. Colo., praying that the proceedings before the commission be duly certified to the court, and that the commission show cause why its findings and order should not be vacated, and respondent reinstated. In response to the citation, the commission certified its record and proceedings to the district court, and hearing was had, at which the record alone was considered. The trial court found that the commission's findings 2, 3, 4, and 5, were not supported by the evidence and ordered the same vacated and respondent reinstated. It is this judgment which the commission asks us to reverse on the writ of error issued herein.

It should be observed at the outset that the con-

stitutional provision applicable herein confers upon the Civil Service Commission, and not upon the courts, the ·exclusive jurisdiction to ascertain the qualifications, fitness and merit of applicants for positions under classified service, and the final determination as to when, under what circumstances, and for what causes those in such service may be removed therefrom.

 The scope of review in certiorari proceedings, and the authority of courts to interfere with the findings of tribunals vested with exclusive jurisdiction to determine particular issues, have, by a long line of decisions, been judicially defined. We cannot consider herein whether the commission's findings are right or wrong, substitute our judgment for that of the commission, or interfere in any manner with the commission's findings if there is any competent evidence to support the same. *State Board v. Spears,* 79 Colo. 588, 247 Pac. 563, 54 A.L.R. 1498; *Board of Adjustment v. Handley,* 105 Colo. 180, 95 P. (2d) 823; *People ex rel. v. Harl,* 109 Colo. 223, 124 P. (2d) 233; *Carpenter, Director of Revenue v. People ex rel.,* 112 Colo. 151, 148 P. (2d) 371; *Jarrett v. Cruise, Director of Revenue,* 117 Colo. 206, 185 P. (2d) 787. There is nothing here presented which would justify a departure from the principle announced in the above decisions.

 There is very little dispute as to the truth of the recitals contained in the findings of the commission. Respondent admits that he made requisitions upon the commission for the names of two persons upon the eligible list for appointment to the position of Bank Examiner I; that the commission certified William J. Milner and James M. Mathes to respondent as eligibles for such appointment; that such eligibles presented themselves for such appointment; that he failed to make the appointment and made no objection concerning the named eligibles to the commission as provided by the rules of the commission. He further admits that during the years 1946 and 1947 he failed to have examined the

books, records, papers, assets and liabilities of said banks, finance companies, and credit unions at the time and in the manner required by law. Respondent's explanations for his failure to perform the above statutory duties were rejected by the commission. In doing so we cannot say, the record considered, that the commission abused its discretion.

With respect to the general findings of the commission that respondent was partial, arbitrary and capricious in granting, or refusing to grant, certificates for the opening and operating of banking institutions; that he used abusive and threatening language to Commissioner Steele; that he was uncooperative with the commission; and that he failed to observe the rules and regulations of the commission with respect to appointments under civil service, we find ample competent evidence in the record in support thereof.

It would unduly lengthen this opinion to recite herein all the testimony in this voluminous record upon which the attorney general relies in support of the commission's findings. It is sufficient to say in relation thereto that such testimony, if believed by the commission, which it obviously was, clearly establishes respondent's unfitness for the position of bank commissioner, indicates a course of conduct incompatible with the best interests of the classified civil service, and justifies his removal from office.

The judgment of the district court is accordingly reversed, and the cause remanded with instructions to enter judgment in harmony herewith.

MR. JUSTICE JACKSON, MR. JUSTICE STONE and MR. JUSTICE LUXFORD dissent.

MR. JUSTICE STONE dissenting.

I dissent from the majority opinion. Charges were filed by Steele, a member of the Civil Service Commission, against the State Bank Commissioner, Hazlett.

Upon hearing before the other two members of the Commission, findings were entered sustaining the charges and Hazlett was ordered ousted from his office. Upon certiorari brought, the District Court found that the findings of the Commission were not supported by the evidence but were arbitrary, capricious and an abuse of discretion, and ordered Hazlett reinstated in his office. This decision is now before us for review.

There is no substantial dispute as to the applicable law. The Civil Service Commission sits as a quasi-judicial body with competence to determine the facts from the evidence submitted pertaining to the written charges filed. The remedy by removal of a public officer is a drastic one and the statutory provision defining the grounds for removal should be given a strict construction. *State ex rel. Fletcher v. Naumann,* 213 Iowa 418, 239 N.W. 93, 81 A.L.R. 483. The court has power of review. "To hold that the courts have no power to review an order of removal of one under civil service or a like order of other state boards clothed with similar powers would result in the investment of such boards with arbitrary and final power of removal. A state official could be discharged without written charges, without a hearing and without proof of charges at the mere caprice or whim of the appointing board. The people of Colorado in adopting the constitutional provision above quoted most assuredly did not intend that it should be so interpreted, and the provisions thereof are not susceptible to such construction." *Civil Service Com. v. Hoag,* 88 Colo. 169, 293 Pac. 338. If the findings of the Commission are supported by substantial competent evidence, they must stand; if they are arbitrary, capricious and an abuse of discretion, it is the prerogative and the duty of the court to set them aside. As we said in *Civil Service Commission v. Hoag, supra*: "Undoubtedly, the Civil Service Commission has the power to adopt standards of efficient service and to remove its employees upon charges of inefficiency being filed and after a hear-

ing, if the evidence supports the charge. * * *. However, where a complaint has been made that no sufficient evidence was introduced to support the charges made, the court undoubtedly has the jurisdiction and power to review such proceedings. * * *. A public official is presumed to act honestly, faithfully and efficiently and the burden of proving that he has failed to so act is upon the one who seeks to oust him. Here this burden was not maintained because no evidence was introduced to prove the charges made. The judgment of ouster based upon findings wholly unsupported by the evidence cannot be upheld by this court."

And, as was said in *Carroll v. City Commission,* 265 Mich. 51, 251 N.W. 381: "Appellant was in office under civil service provisions. He could not be captiously removed on trivial or technical grounds. If he was to be removed at all it must be removal for cause and that which is charged as a reason or justification for removing one from office for cause must relate to and affect the administration of the office. It must be something which in a material way affects the rights and interests of the public."

The written charges as made more specific in response to motion therefor were in brief as follows:

1. Failure and refusal to appoint one Milner to the position of Bank Examiner after his certification to the position by the Commission;

2. Failure and refusal to appoint one Mathes to the position of Bank Examiner after his certification by the Commission;

3. Failure to comply with the standards of efficient service in that:

(a) He refused to appoint Milner and Mathes as bank examiners;

(d) he is uncooperative with the Civil Service Commission, by failing to keep his promise to Commissioner Steele to appoint Milner and Mathes.

(e) that he is abusive in manner, language and be-

havior in that in a telephone conversation on March 3 or 4, 1948, with the complainant, he used the term "snotty" in response to question by complainant and twice threatened to come over and punch him in the nose.

4. Failure and neglect to examine banking institutions within the State of Colorado in the manner and at the times required by law.

Other grounds of asserted failure to comply with the standards of efficient service were stated in the charges, but since they are not sustained by findings of the Commission, they need not be here mentioned.

Still other grounds of asserted failure to comply with the standards of efficient service were found by the Commission, but they were not included in the charges made against Hazlett. Article XII, sec. 13, of the Colorado Constitution provides that persons in the classified service shall be removed or disciplined only upon written charges to be finally and promptly determined by the Commission upon inquiry and after an opportunity to be heard. "Manifestly, where the law grants a right, it grants the *substance* of the thing granted, and not the mere *form* thereof, for it is not to be presumed that the law *'intended to extend a barren right.'* * * * Hence, when the act of 1910 provided that no member of the department should be fined or suspended or removed until *written charges* shall have been made against him before the chief engineer, and heard after reasonable notice to the party charged, it followed that the law intended that the hearing should be upon the charge *as made*, and not upon some other and different alleged offense with which the party has *not* been charged, and of which he has *not* had notice, reasonable or other." *Jones v. City of New Orleans*, 160 La. 646, 107 So. 476. The Commission was limited in its inquiry and findings to the specific charges of which Hazlett had been given notice and opportunity to defend. Therefore, the only charges upon which the order of the Commission may depend are those above set out.

It may first be noted that the background and atmosphere of the hearing was not that of a quasi-judicial body, but rather that of personal animus and pique.

While charged with refusal to appoint Milner and Mathes, neither of these men appeared to file charges against him. While charged with failure in efficient service, bankers from many parts of the state voluntarily appeared at the hearing to testify as to his efficiency and there was no evidence of inefficiency. While charged with being abusive, the testimony both of the bankers and others with whom he dealt and of the deputies whom he supervised, and the correspondence in evidence shows uniform courtesy and consideration. Instead of taking up in orderly procedure the charges filed, the Commission proceeded to take up all manner of charges and make findings thereon without substantial evidence in their support and without notice and opportunity to Hazlett for defense. The charges were filed by Steele, one of the three members of the Civil Service Commission, following a telephone conversation on March 5, 1948, wherein Steele demanded the immediate appointment of Milner and Mathes and the parties became angry and Steele said Hazlett told him not to get snotty and asked if he wanted Hazlett to come over and punch him in the nose. Prior to that date Steele testified that he and Hazlett were getting along all right; that Hazlett was cooperating with the Commission and everything was amicable. There is no suggestion of controversy or insubordination up to the date of the telephone conversation which generated personal feelings between the men, nor afterwards. A few days after that conversation the charges were filed. As to these charges, the evidence is substantially undisputed.

Turning to the first charge, what were Hazlett's duties in connection with this appointment? He was the appointing authority. It is insisted that he had no concern with the qualifications of applicants and must forthwith appoint the person certified. The Commission's Rule

VIII requires that he shall appoint the eligible certified by the Commission *"unless the appointing authority offers an objection in writing based on Art. V. sec. 4,* and this objection is sustained by the Commission." Art. V, sec. 4 of the rules of the Commission, so referred to, provides, inter alia, that the Commission may disqualify an applicant or remove his name from the eligible list or refuse to certify him if (a) he is found to lack any of the preliminary requirements established for the examination, or (b) he is so disabled as to be rendered unfit for the performance of the duties of the class. Under Rule VIII, then, it became the duty of Hazlett to appoint the person certified unless he offered objection in writing based on Art. V, sec. 4; that is, unless he offered objection based on lack by the applicant certified of any of the preliminary requirements established for the examination, or on such disability as to be rendered unfit for the performance of the duties of the position, or some other ground specified in section 4. The right to make such objection necessarily gave reasonable time and opportunity for investigation of such grounds. Where, as here, no time is set by the rule, reasonable time must depend on the information obtained and justification for further inquiry. Prior to the certification of Milner, one Stoller was acting as provisional examiner. Until he was dismissed there was no vacancy to be filled. The Commission ordered him dismissed by February 29, 1948, and on February 10 certified Milner for the position to report for work March 1. Milner testified that about February 16, he went to see Hazlett, who told him there would have to be some steps taken; that he went again to Hazlett about the 27th or 28th of February and Hazlett said he could not go to work about March 1, and asked for some references and said that Hazlett would do the appointing and it would take time, and that Milner gave him five names as references. Milner admitted that he had no knowledge of credit unions and finance companies, which he was required to examine.

Thereupon, since Milner was not certain of obtaining the position, he withdrew his resignation from the bank where he had been employed and advised the Civil Service Commission that he would not accept the position. The next day after obtaining references from Milner, Hazlett wrote to the vice-president of the bank by which Milner had been employed for seventeen years and received reply on March 5 that he was limited in ability, had spent the entire time in the bank's batch and transit departments and it was doubtful if he had much knowledge of the loaning department of a bank or finance business. At no time did Hazlett refuse to appoint Milner, and on March 5, at the time Steele filed his charges, he knew that Milner had declined the appointment while Hazlett was investigating him. The Colorado statutes, chap. 81, Laws 1945, require that any deputy state bank commissioner shall have had at least five years' practical experience as an active executive officer of a bank which "shall mean any person who has had five years experience in administering the loan department or the investment bond account of a bank." If this statute was within legislative competence, it is evident that Milner was lacking in the preliminary requirements demanded by law for the position and had not the experience necessary for an examiner and that it was the right and duty of Hazlett to offer objection to his appointment. Previously Hazlett had written to the Attorney General for advice as to making appointments of persons who did not meet the requirements of the law, and had been advised by him that "in making appointments to the office or position of deputy bank commissioner, you must follow the provisions of the statute, rather than the rules of the Civil Service Commission." Hazlett sent a copy of the Attorney General's letter of advice to the Commission but apparently received no reply. About February 27, Hazlett discussed with Steele the possibility of removing appointees if they proved to be the type of men who could not be

used. The charges were filed against Hazlett on March 12, and he was immediately suspended.

The finding of the Commission, which the majority of this court affirms, is, in effect, that where a bank commissioner takes eighteen days to investigate one certified to him for appointment concerning whom he has reliable information that he is not eligible nor qualified for appointment, such delay justifies ouster of the Bank Commissioner from office. I cannot concur.

As to the second charge, Mathes received certification from the Commission and testified that he went to Hazlett's office on February 16 or 17 and that Hazlett told him he didn't know the exact time when he would go to work, as far as he was concerned or as far as he knew there was then no opening in the office. A few days later he again saw Hazlett who asked him his qualifications, where he worked and for recommendations, and discussed the nature of the job, and Mathes told him he didn't know whether he could make bank examinations or not. Mathes lacked the statutory requirements of five years' experience for the position. Further, he lacked the preliminary requirement established by the Commission for an applicant for the position that he be a high school graduate, and he lacked other preliminary qualifications of employment experience set up by the Commission. He lacked the physical requirement for the appointment that applicant be "sound in health with no disabling defects of mind and body." Hazlett wrote to the cashier of the bank at Alamosa, by which Mathes had been employed, and received a reply on March 4, saying: "Mathes was in poor health, and at various times, during the last few months with us was at home or in the Veterans' Hospital as a result of illness. He informed me that his trouble was diabetes * * *. At first I thought most of his trouble was the same as experienced by many men returning from the service, difficulty in adjusting themselves to normal life, however, I am now inclined to believe that he suffered more from his health

than he realized." Mathes himself testified that during his employment at the Alamosa bank he averaged about one day a week when he could not work. Hazlett made further inquiry as to Mathes' health from the Veterans' Administration, but reply was not received until after his suspension from office.

With such information being gathered on the very vital subjects upon which his written objections, if any, were required to be based, and with the opinion of the Attorney General before him advising against his appointment of those not meeting the statutory requirements, it is held by the majority opinion that the bank commissioner must be ousted from office for taking twenty-four days for investigation. Certainly, in the words of the Massachusetts Court, this is "evidence which to fair minded persons appears inadequate to justify the conclusion reached."

As to the third charge of failure to comply with the standards of efficient service, it may be noted that the Commission is nowhere shown to have adopted any such standards with which Hazlett could comply. In any event, specifications (a) and (b) thereunder are merely repetitions of the first and second charges of failure to appoint Milner and Mathes, and the only new charge to be considered is the specification in subdivision (e), that Hazlett was abusive to Steele in a telephone conversation. Whatever words may have provoked Hazlett's rejoinder in that conversation, his words were not justified and he attempted no justification. On the contrary, he made public apology and mentioned as excuse his undisputed illness at the time. His language to Steele was juvenile, and perhaps it was equally juvenile to take it too seriously. There is no suggestion in the charge or the record of any abusive language or behavior on the part of Hazlett toward the Commission or toward Steele or any other persons other than this one time. "Removal without proper cause includes a removal for reasons which are insufficient, frivolous or

irrelevant, and a removal grounded upon evidence which to fair minded persons appears inadequate to justify the conclusion reached but falling short of an exercise of bad faith." *Murray v. Justices of the Municipal Court,* 233 Mass. 186, 123 N.E. 682. So it was held in *Carroll v. City Commission, supra,* that charge of excessive and unnecessary profanity, even if true, was captious and not sufficient ground for removal. "Where the removal is to be for official misconduct or for misfeasance or maladministration in office, the misconduct which shall warrant a removal of the officer must be such as affects his performance of his duties as an officer and not such only as affects his character as a private individual." Mechem, Public Offices and Officers, §457.

In my opinion the ouster of a public officer otherwise uniformly courteous and considerate on the ground of a single outburst of anger as here charged is captious and without substantial support.

The one remaining charge to be considered is the failure and neglect to examine banking institutions in the manner and times required. The statute requires two examinations of each bank per year. In the year 1946 Harl continued as State Bank Commissioner until June. Hazlett did not take office until June 6. Both were short of deputies. There is no evidence whatever that Hazlett or his deputies did not to the best of their ability perform the duties of the office for the portion of the year Hazlett was in charge, and he patently cannot be held for failure in performance of work required to be accomplished in a full year, when he was in office only six months. As to the year 1947, the evidence discloses that there were sixty-six state banks requiring examination; that all of these were examined once and sixty-one of them examined twice; that he was allowed by law only five examiners; that of these, in the year 1947, he was short one examiner for the year and a second examiner for fifty weeks; that he made requisition for a chief deputy in June, 1946, and the Commission

certified no one for the position until March 20, 1947; that more examiners are required for this work; that on January 9, 1947, he discussed the matter with the Civil Service Commission and the next day wrote it at length regarding the difficulty and shortage; that he repeatedly sought further deputies from the Commission without relief; that he applied to the Legislature for extra deputies, and that accompanied by leading bankers he appealed to the Governor. There was testimony as to the department not having sufficient deputies to do the necessary work by the chief deputy, by the president of the International Trust Company, by the president of the Mountain States Bank and other competent witnesses, and there was no evidence whatever as to any failure of Hazlett or his staff to do all that was possible in view of the insufficient help and salaries allowed by statute and the failure of the Commission to furnish him competent eligibles even in the number allowed by statute. This charge is so frivolous, insincere and unjust as to demonstrate the capricious nature of the entire proceeding, and that it was not initiated for the good of the service, but by reason of personal pique.

In summary, the Commission ousted Hazlett from office because:

(1) Although the Commission waited more than eight months after Hazlett requisitioned for a deputy before having an examination to select eligibles therefor, and the Attorney General had advised Hazlett he should not appoint deputies who did not possess the statutory requirements, and Hazlett under the rules of the Commission had the right to file written objections to the appointment of anyone certified based on lack of qualifications and health, it is determined to be a violation of standards of efficient service for Hazlett to investigate applicants before making appointments.

(2) Although the number of deputies allowed Hazlett was not sufficient to perform the duties required of his office and the Commission itself failed to certify for

appointment even the number of deputies to which he was legally entitled, and although he made one examination of every bank under his jurisdiction, yet he failed to make a second examination of five of the sixty-six banks to be examined during a calendar year; and

(3) Although the Commission was not Hazlett's superior officer and had nothing to do with the operation of his department except establishing standards and the selection of candidates by competitive tests and the discharge of those found incompetent, and although Hazlett had at all times been courteous and cooperative with the Commission and others with whom he dealt, yet in a single telephone conversation with a member of the Commission he made a silly and angry remark.

Under such decision, the Civil Service Commission is above the law, and state officers and employees thereunder hold their positions not "during efficient service" as provided in the Constitution, but according to the whim of the Commission. I do not believe such a status was intended by the Civil Service amendment to the Constitution; I do not believe it is wholesome for the commonwealth.

MR. JUSTICE JACKSON and MR. JUSTICE LXUFORD join in this dissenting opinion.