## No. 18,876.

CITY AND COUNTY OF DENVER *v*. DISTRICT COURT OF THE
FIRST JUDICIAL DISTRICT, ET AL.

(342 P. [2d] 648)

Decided July 13, 1959. Rehearing denied August 17, 1959.

Mr. JOHN C. BANKS, Mr. EARL T. THRASHER, Mr. HANS
W. JOHNSON, for petitioners.

Messrs. CRANSTON & ARTHUR, for respondents.

Mr. ROBERT D. INMAN, *amicus curiae.*

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS is an original proceeding in the nature of certiorari challenging an order of the district court awarding to the Glendale Water and Sanitation District in eminent domain immediate possession of certain property in the City and County of Denver. We will refer to the complainant as Denver and to respondents as Glendale.

The property involved is a public stream known as Cherry Creek which bisects Denver, and the channel of which traverses residential portions of the city as well as the business and industrial areas. Cherry Creek is under the jurisdiction and ownership of Denver, embracing not only the stream bed but also two hundred feet on each side — a four hundred foot strip of land. This ownership extends for some miles including the area here involved, there being no dispute as to that fact. Glendale seeks easements and rights of way through and across Cherry Creek not only for water and sewer lines but also for the discharge pipe from a sewage disposal plant for the deposit of effluent from the plant into the bed of Cherry Creek. One of the pipe lines which also would project into the stream is to be a by-pass line carrying raw sewage in the event of a plant failure.

It was established at the hearing for immediate possession, and is a matter of common knowledge, that the channel of Cherry Creek is virtually a dry bed throughout the year except in times of violent storm when certain tributary dry gulches and storm sewers send water, sometimes in great volume, down the channel. But for the most part there is no stream with which to dilute or

carry off the effluent. So if the sewage plant were constructed and the stream bed were taken as part of the sewage system, the sewage effluent would be the sole and only material flowing in said channel. It would either collect in stagnant pools or by its own volume over the years with increased usage traverse the east-west length of the channel through Denver to the Platte River. In such circumstances there would be *little* difference in discharging the effluent into the street or to let it run down the gutter-ways or barrow pits.

 One question is determinative of the issues here. It is:

*Can the public waters or beds or channels of public streams be condemned for sewage purposes?*

This question is answered in the negative.

The statutes of Colorado, the ordinances of the City and County of Denver, and two pertinent decisions of this court combine to make it clear that Glendale cannot condemn Cherry Creek for the disposal of its sanitary sewage effluent. The pertinent statutes, all in C.R.S. '53, are:

"36-18-4. *Platte River and Bear Creek pollution unlawful.* — It shall be unlawful for any person to deposit into the channels of the South Platte River or Bear Creek, or any of their tributaries above the mouth of Clear Creek or between or upon the banks of said streams, any unwholesome matter or substance whatever tending to the defilement or pollution of the water of said streams, or to allow the drainage from any sewer, drain or cesspool to drain into or percolate into said streams, or their tributaries, or any of them, or permit any dead animal or decaying vegetable matter to be placed or left within a distance of three hundred feet of the banks of any said streams, or their tributaries, or to do any other act or thing whereby the water of said streams might become polluted or unfit or unwholesome for human consumption; but the disturbances of water by placer mining or tailings from ore reduction

mills flowing into any of said streams or tributaries shall not be construed as defilement or pollution of the water thereof.

"36-18-5. *Jurisdiction over streams.* — The city and county of Denver is hereby given jurisdiction over said streams to protect their purity under section 36-18-4, and is hereby authorized to provide by ordinance for the patrol of said streams and for the punishment of offenders against the provisions of said section.

\* \* \*

"36-18-9. *Obstructions or pollutions.* — The city council of the city and county of Denver may enact and adopt ordinances for the purpose of preventing and removing obstructions in said channel or encroachments upon the same or polluting the waters thereof, and to in every manner control, regulate and protect said property, when improved in whole or in part, and provide for a penalty for the violation of any or all of said ordinances."

Pursuant to this statute Denver has enacted ordinances contained in section 862 of the Revised Municipal Code, the significant portions of which follow:

"9. Unlawful to Defile Platte River, Cherry Creek.

".9-1. It is hereby declared to be unlawful and a nuisance for any person, firm, or corporation to suffer or permit any sewage, filth, or waste, or unwholesome matter or substance of any kind, tending to the defilement of the waters of the Platte River and Cherry Creek to be deposited in the bed or channels of said streams at any point or place within the limits of the City and County of Denver, or within a distance of seventy-five (75) miles above the limits of the City and County of Denver.

".9-2. It shall be unlawful for any such person, firm, or corporation to do or suffer or permit any act or thing which shall defile or pollute the water of the Platte River or of Cherry Creek within the limits aforesaid.

".9-3. It shall be unlawful for the Board of Water Commissioners, or other company, corporation, person or

persons, to turn into the water supply of the City and County, or to permit to be added to the supply, any water from the Platte River or Cherry Creek, or tributaries thereof, which is defiled or polluted or impure. (Sec. 1106)"

One of the cases decided by this court determinative of the question here is *Mack v. Town of Craig,* 68 Colo. 337, 191 Pac. 101, wherein the court said:

"It is the law of this jurisdiction that neither the public waters, nor the beds or channels of public streams, can be condemned and taken under eminent domain. *Healy v. Delta,* supra. It is contended that no such attempt is here being made. However, it is to be noted that the authorities hold that a pollution of a public stream is in effect such taking. 15 Cyc. 660, and Lewis on Eminent Domain, section 84. It is manifest that no one should be permitted thus to indirectly accomplish that which cannot be legally done by virtue of eminent domain proceedings. The situation is one pre-eminently for legislative consideration."

The other and earlier case, cited with approval in *Mack v. Town of Craig,* supra, is *Healy v. Delta,* 59 Colo. 124, 147 Pac. 662, and therein it is stated:

"In this cause the City of Delta, by proceedings under the Eminent Domain act, obtained a judgment giving it a strip of land belonging to the plaintiff in error, and constituting a part of the bed of the Uncompahgre River, with the right to use said river for the conveyance of the city's sewage.

"It is assigned as error that the court was without jurisdiction to enter the judgment which in effect condemns the waters of the river, and makes it a part of the sewer system. This is the only question necessary to be considered. Municipal corporations can exercise the right of eminent domain only to the extent to which the power has been conferred upon them by statute.

" 'Not only must the authority to municipal corporations, or other legislative agents, to take private prop-

erty, be expressly conferred, and the use for which it is taken specified, but the power, with all constitutional and statutory limitations and directions for its exercise, must be strictly pursued.' Dillon Mun. Corps. 5th Ed. sec. 1040. See also, Lewis on Eminent Domain, sec. 240. *Allen v. Jones,* 47 Ind. 438.

"The statutes of the state grant to municipal corporations authority to condemn land for streets, and for other purposes, including the right of way for sewers, but we find no statute which provides for their condemning a public stream for the purpose of making it a part of a sewer system."

We deem the situation here identical in principle with the foregoing cases although it is to be noted that raw sewage was involved in both earlier cases.

The court was in error in concluding that the taking by Glendale for such purpose was lawful; hence the order of the district court awarding to Glendale possession of the property must be vacated and held for naught. The rule to show cause is made absolute and the cause is remanded with directions to dismiss the proceedings.