## No. 18,859.

MARY V. LUCAS, ET AL. *v.* DISTRICT COURT OF
PUEBLO COUNTY, ET AL.
(345 P. [2d] 1064)

Decided March 9, 1959.

November 2, 1959, on rehearing, original opinion
modified and as modified adhered to.

Messrs. PETERSEN, EVENSEN & EVANS, for complainants.

Messrs. PHELPS, FONDA & HAYS, for respondents.

Mr. KENNETH M. WORMWOOD, Mr. SAMUEL M. JANUARY, Mr. WILLIAM K. RIS, Mr. WALTER A. STEELE, Mr. MYRON H. BURNETT, *Amici curiae.*

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THIS is an original proceeding under Rule 106 in which the plaintiff seeks an order directing the District Court of Pueblo County to require the defendants to furnish information pertaining to liability insurance. The matter

arose during the taking of the defendants' depositions. This was brought to the attention of the District Court by motion and that court refused to grant the requested relief.

The complaint contains the following facts: That there is now pending in the Pueblo District Court a certain suit in which the plaintiffs here are plaintiffs and George M. and Grace Elaine Moore are defendants; that in the course of taking the depositions of the defendants, questions were propounded relative to the existence of liability insurance and the policy limits thereof; that the defendants refused to answer the questions; that thereupon a motion was filed to compel the disclosure of the liability limits of the insurance policy which the defendants admittedly had, and the trial court denied this motion. It is alleged that the liability policy is subject to the Safety Responsibility Law of Colorado; that this statute was enacted for the protection of the public; and that following the collision, the provisions of the insurance policy became active under C.R.S. '53, 13-7-23 (a), and the plaintiffs have a right to discover the information as bearing on the extent of trial preparation and so as to obtain full benefit to the existence of the insurance coverage. It is also alleged that the matter is relevant within the terms of Rule 26 (b), Rules of Civil Procedure.

Hearing on the issues raised by the motion was had in the district court and it held:

"That the discovery in question was sought prior to the trial and judgment, and plaintiffs desired this information for the purpose of using it in an attempted compromise of the action and not for the purpose of satisfying a judgment already obtained."

Following the filing of the complaint herein, we issued an order directed to the trial court to show cause why the requested relief should not be granted. Within the time, defendants filed their motion to dismiss the complaint. This motion questioned the validity and propriety

of mandamus as a remedy. The averments of the motion are that the question is one which called for the exercise of discretion by the District Court, and for that reason its action is not subject to review by means of this extraordinary remedy.

█ Although the case purports to arise under Rule 106, it is our view that this rule does not apply to *original* proceedings. The Constitution of Colorado, Article VI, Section 3, declares in referring to this Court that "It shall have power to issue writs of mandamus, quo warranto certiorari, injunction and other original and remedial writs with authority to hear and determine the same. * * * "

In *Leonhart v. District Court*, 138 Colo. 1, 329 P. (2d) 781, we said:

"Our authority to entertain remedial writs is conferred by the Constitution, and 'is not dependent upon, or governed by the statute' or rules of civil procedure on the subject. *People ex rel. Lindsley v. District Court*, 30 Colo. 488, 71 P. 388. 'Those writs, however, are the common law writs * * * '. *Bulger v. People*, 61 Colo. 187, 156 P. 800, 803."

We shall treat this complaint as if it were a petition seeking the issuance of a writ of mandamus or certiorari as the same existed at common law. Although the procedure question here presented was determined when the rule to show cause issued, we shall comment on it (since defendant has filed a motion to dismiss which raises the issue).

█ 1. *Validity of the Procedure.* We have concluded that the matter should be determined on its merits and that the motion to dismiss should be denied. In our view, the procedure which has been followed by the plaintiffs is the only procedure which would permit them to test the validity of the trial judge's ruling. Had they permitted this question to await final judgment it would then have become moot, because concededly the testimony in question would not have been admissible at the

trial with the result that the final judgment of the trial court would not have been affected by the instant ruling. Since the order is interlocutory and thus not reviewable by writ of error, there is in truth no adequate remedy available to the plaintiffs.

Defendants have argued that since the substantive issue is one of first impression in Colorado and since there is a division of viewpoint in other jurisdictions, the trial court exercised a discretion in selecting one viewpoint and in rejecting the other. This, it is argued, cannot be reviewed by mandamus. This argument does not take into account that the ruling of the trial court in pre-trial matters would as a general rule become final and the aggrieved party would be helpless to obtain relief by writ of error. The situation is analogous to that which was presented to this Court in *Town of Glendale v. City and County of Denver,* 137 Colo. 188, 322 P. (2d) 1053, wherein it was held in an eminent domain proceeding that writ of error would not issue to review an interlocutory order granting immediate temporary possession. The Court cited *Swift v. Smith,* 119 Colo. 126, 201 P. (2d) 609, and said:

"The proper proceeding for relief from an interlocutory order as stated in *Swift v. Smith,* supra, is by certiorari. Later in *Patashnik v. Public Service Company of Colorado,* 126 Colo. 98, 247 P. (2d) 137, 138, this court, we think, intended to and did in fact remove all confusion as to procedure by carefully outlining the proper remedy as follows:

" ' * * * within the period of stay of execution granted by the trial court, the owners, not having the right of review of said interlocutory order upon writ of error, filed original action by way of certiorari in this court, alleging that otherwise they were without remedy whatsoever to protect their property from seizure under the order of the district court, which they contend was without lawful authority. * * * '

"The court then went on to say, 126 Colo. at page 101, 247 P. (2d) at page 138:

" 'That a writ of error to review an interlocutory order of the district court will not lie is conceded. That an original proceeding in the nature of certiorari under Rule 106, R.C.P. Colo., when directed to an endangered, fundamentally substantive and substantial right, is maintainable and recognized as a proper remedy is settled. *Swift v. Smith,* 119 Colo. 126, 201 P. (2d) 609.' "

We hold that the denial of a right such as that here asserted (in pre-trial proceedings), which action is not reviewable otherwise, may be determined by means of an original proceeding in certiorari in this court.

We conclude that the complaint should be entertained and that this question should be determined on its merits.

2. *Scope of Discovery.* In order to decide whether inquiring into the existence and extent of liability insurance is proper in pre-trial depositions, we must consider Rule 26 (b), R.C.P. Colo., which provides in pertinent part:

" * * * the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, * * *. It is not grounds for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

The specific question for determination is whether the mentioned inquiry is *"relevant* to the subject matter involved in the pending action" within the meaning of this rule, or whether relevancy as here used is restricted to evidence which is admissible at the trial or testimony which is reasonably calculated to lead to the discovery of admissible evidence.

As bearing on this question, our attention has been

directed to the Automobile Safety Responsibility Law, C.R.S. '53, 13-7-1, et seq., and specifically to Sections 13-7-19, 22 and 23. In general, the purpose of the provisions cited is to foster and promote insurance coverage or, in the event of accident, a bond to insure financial responsibility. Its ultimate object is to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles. Toward these ends, it provides *inter alia* that (1) the insurance carrier's liability shall become absolute whenever loss or damage covered by the policy occurs; (2) that attempted satisfaction of final judgment by insured shall not be a condition precedent to the obligation of carrier to make payment; (3) that fraud, misrepresentation or other act of insured in obtaining the policy shall not constitute a defense available to the insuror against a judgment creditor; and (4) limitations upon the cancellation of a policy. See 13-7-23 supra.

It is often said that the injured person is a third party beneficiary in these insurance contracts. Cf. *Ewing v. Colo. Farm Mutual Casualty Co.,* 133 Colo. 447, 296 P. (2d) 1040. See also *Superior Insurance Co. v. Superior Court,* 37 Cal. (2d) 749, 235 P. (2d) 833, and *State ex rel. Allen v. Second Judicial Court,* 245 P. (2d) 1003 (Nev. 1952), holding that policies issued pursuant to acts similar to that here in question are enforcible by injured parties.

In *People v. Fisher,* 12 Ill. (2d) 231, 145 N.E. (2d) 588, it was said:

"Thus, under our statutes, as in California, liability insurance is not merely a private matter for the sole knowledge of the carrier and the insured, but is also for the benefit of persons injured by the negligent operation of insured's motor vehicle."

In the light of our Safety Responsibility Act and taking into account its objects and purposes, we are of the opinion that the inquiries concerning the existence of

liability insurance and extent of coverage are "relevant to the subject matter involved in the pending·action."

The question is one of first impression in this state and we have looked to the decisions of other jurisdictions rendered under acts or rules substantially similar to the Federal Rules of Civil Procedure and our Rules of Civil Procedure (which are patterned after the Federal Rules).

In some of these cases it is held that discovery is permissible only in respect to matters which constitute admissible evidence. In this group is *Bean v. Best,* 76 S.D. 462, 80 N.W. (2d) 565, wherein it was held that the plaintiff was not entitled to an order compelling production of an insurance policy for inspection and copying. Under South Dakota's Rule 34 the Court held that since the policy was not admissible in evidence, discovery would not be allowed. The Court noted that insurance did not concern (directly) the action which was then pending, rather a future action against the insuror which was contemplated. It is to be noted, however, that the South Dakota rule had not been amended in accordance with the amendments which liberalized the Federal Rules and the decision seems to be predicated upon this fact.

The case of *Goheen v. Goheen,* 9 N.J. Misc. 507, 154 Atl. 393, also denied the discovery and did so on the ground that "the interrogatories propounded are not material to the issue and are not relevant and competent evidence for the plaintiff." These two decisions are contrary to the express terms of our Amended Rule 26 (b) which expressly provides that the scope of examination is not limited to testimony which will be admissible in the trial.

Rule 26 (b) was amended August 18, 1951, to conform to the 1946 modification of the Federal Rule which is its counterpart. On that occasion the final sentence which provides: "It is not ground for objection that the testimony will be inadmissible at the trial if the testimony

sought appears reasonably calculated to lead to the discovery of admissible evidence," was added.

As we view it, the purpose of this amendment was not to limit the scope of this examination, but rather to enlarge it by eliminating the objection that the testimony sought would not be admissible at the trial. We do not believe that it was intended to limit the clause "relevant to the subject matter involved in the pending action," so that it embraces only that "testimony * * * calculated to lead to the discovery of admissible evidence." Our conclusion is therefore based upon the pre-amendment Rule 26 (b).

■ In our view, the term "relevant to the subject matter involved in the pending action" includes inquiries as to the existence of liability insurance and the policy limits of such insurance. This is the construction which has been adopted in the following cases: *People v. Fisher*, supra (Ill. 1957); *Maddox v. Grauman* (Ky.), 265 S.W. (2d) 939, 41 A.L.R. (2d) 964; *Brackett v. Woodall Food Products*, 12 F.R.D. 4; *Orgel v. McCurdy*, 8 F.R.D. 585 (S.D. N.Y.); *Demaree v. Superior Court*, 10 Cal. (2d) 99, 73 P. (2d) 605 (followed by *Superior Insurance Co. v. Superior Court*, 37 Cal. (2d) 749, 235 P. (2d) 833). In the case of *Layton v. Cregan & Mallory Co.*, 263 Mich. 30, 248 N.W. 539, it was held that existence of insurance coverage was a proper discovery inquiry where ownership of the vehicle was in issue. This case predated the liberalized discovery provisions.

The most fully considered and persuasive decision among those cited, involving as it does a rule identical with ours (except as to the liberalizing sentence of 1951) and a safety responsibility statute similar to that which is in force in this state, is that of *People v. Fisher*, supra. We quote from that opinion:

"Unlike other assets, a liability insurance policy exists for the single purpose of satisfying the liability that it covers. It has no other function and no other value. Litigation is a practical business. The litigant sues to

recover money and is not interested in a paper judgment that cannot be collected. The presence or absence of liability insurance is frequently the controlling factor in determining the manner in which a case is prepared for trial. That there will be actual rather than nominal recovery conditions every aspect of preparation for the trial of these cases — investigators, doctors, photographers and even the taking of depositions. Ordinarily a plaintiff has many sources of inquiry by means of which he can appraise the likelihood that the judgment he seeks will be enforceable. In the case of an insurance policy, however, all the customary channels are cut off. Even if he knows the identity of the insurance company and may know its financial standing, it does not help him, for the company is responsible only within the limits of the policy it has issued.

"In determining whether liability insurance is discoverable by pretrial interrogatories, we must also take cognizance of the role of insurance companies in such litigation against their insured, for as Justice Holmes noted, 'Judges need not be more naive than other men.' Inasmuch as the insurance company is virtually substituted as a party (*Maddox v. Grauman,* Ky., 265 S.W. (2d) 939; dissent in *Jeppesen v. Swanson,* 243 Minn. 547, 68 N.W. (2d) 649, 658), as far as the investigation and conduct of the defense is concerned, it would seem to be relevant, if not indispensable, that plaintiff's attorney have knowledge of the existence of insurance in order to prepare for the case he has to meet and be apprised of his real adversary. Such knowledge, furthermore, would also lead to more purposeful discussions of settlement, and thereby effectuate the dispatch of court business. This aspect is most significant in terms of effective judicial administration in coping with today's congested dockets which are largely attributable to the increasing volume of personal injury litigation.

"On the basis of this analysis, it is our opinion that discovery interrogatories respecting the existence and

amount of defendant's insurance may be deemed to be 'relat[ed] to the merits of the matter in litigation,' as provided in Civil Practice Rules 101.19-11 and 101.19-4, since they apprise injured plaintiffs of rights arising out of the accident, otherwise unknown, and which the public policy of this State protects, give counsel a realistic appraisal of his adversary and of the case he must prepare for, and afford a sounder basis for the settlement of disputes. We believe that such a construction is in accordance with the intention of the framers of the amended Rules to give a broader scope to the practice of discovery and thereby enable attorneys to better prepare and evaluate their cases."

In *Orgel v. McCurdy,* supra, the U.S. District Court for the Southern District of New York commented upon the issue presented as follows:

"The information sought by an examination must be relevant to the subject matter of the pending action. *Stevenson v. Melady,* D.C.S.D.N.Y. 1940, 1 F.R.D. 329. Under Federal Rules of Civil Procedure, rule 26 (b), 28 U.S.C.A., it is not necessary to establish the admissibility of the testimony; it is sufficient that the inquiry be made as to matters generally bearing on the issue and relevant thereto. *Mackerer v. New York Central R. Co.,* D.C.E.D.N.Y. 1940, 1 F.R.D. 408. See also *Engl v. Aetna Life Ins. Co.,* 2 Cir., 1943, 139 F. (2d) 469, 472:

" 'For by the extensive discovery practice of the new rules, examination before trial may be had not merely for the purpose of producing evidence to be used at the trial, but also for discovery of evidence, indeed, for leads as to where evidence may be located.' "

In *Brackett v. Woodall Food Products,* supra, the opinion of the U.S. District Court for the Eastern District of Tennessee in upholding the right of plaintiff to production of the liability insurance policy under Rule 34 pointed out that the modern trend of legislation is in the direction requiring operators of motor vehicles to maintain liability insurance for the protection of third

persons and that this has been necessitated by the tremendous increase of the number of such vehicles and the irresponsibility problem. The Court said:

"From the tenor and purpose of such legislation it is obvious that such insurance policies are definitely relevant to the subject matter of pending actions growing out of accidents covered by such policies, especially in view of the fact that this legislation apparently would require the defendant to disclose to the state authority the information concerning the insurance which plaintiffs seek, and this would be a matter of public record.

" * * * The Court finds that it is material to the plaintiffs, in the preparation of their cases for trial, that they be given an opportunity to inspect and, if desired, to copy or photograph the liability insurance policy as the policy provisions may afford the plantiffs rights of which they would otherwise not be able to avail themselves."

Also, in *Maddox v. Grauman,* supra, the same viewpoint obtained. Again the Court pointed out that the liability insurance policy is for the benefit of injured persons in that it provides security for the satisfaction of any judgment obtained. The Court then concluded:

"If the insurance question is relevant to the subject matter after the plaintiff prevails, why is it not relevant while the action pends? We believe it is. An insurance contract is no longer a secret, private, confidential arrangement between the insurance carrier and the individual but it is an agreement that embraces those whose person or property may be injured by the negligent act of the insured. We conclude the answers to the propounded questions are relevant to the subject matter of the litigation and within the spirit and meaning of CR 26.02. See Brackett v. Woodall Food Products, Inc., D.C., 12 F.D.R. 4; Orgel v. McCurdy, D.C., 8 F.R.D. 585; Superior Insurance Company v. Superior Court in and for Los Angeles County, 37 Cal. 2d 749, 235 P. 2d 833."

The thread which runs through all of these decisions is that the term "relevant" is not limited to

matter which is admissible in evidence at the trial or which will properly lead to admissible evidence, but includes all of those things which are relevant to the subject matter of the action. These cases hold that the relevancy of insurance coverage stems from the fact that the carrier defends the action and must respond in damages after a judgment is obtained.

It is also conceivable that although a defendant may have liability insurance he may fail to properly notify his insurance carrier. This neglect would seriously prejudice the plaintiff under the Safety Responsibility law. Thus it is in the interest of the plaintiff to ascertain all of the facts pertaining to liability insurance coverage, including whether there has been notice to the carrier.

That the term "relevant" must be given a liberal interpretation is indicated by *Moore* in his work on *Federal Practice,* 26.14 (Pocket Supplement attached to Vol 2). He states that the rules contemplate that a deponent shall answer *all* questions except those to which he objects on the ground of privilege and that objections based on admissibility are to be saved until the actual trial.

The cases which are considered above are included in a note which is reported in 41 *ALR 2d* 968. This follows a report of *Maddox v. Grauman,* supra.

 As a result of our study of the rules, the statute and the decisions of other jurisdictions, it is our opinion that the holding which allows questions to be propounded in pre-trial depositions for the purpose of eliciting information as to the existence of liability insurance and the policy limits of such liability insurance is the better rule, and the one which is more in accord with the object, purpose and philosophy of the Rules of Civil Procedure. This object and purpose is served by holding that the scope of examination is broad. This will have a tendency to eliminate secrets, mysteries and surprises and should promote disposition of cases with-

out trial and substantially just results in those cases which are tried.

Therefore, we conclude that the rule to show cause heretofore issued should be made absolute, and it is so ordered.

MR. JUSTICE FRANTZ specially concurring, MR. CHIEF JUSTICE KNAUSS, MR. JUSTICE SUTTON and MR. JUSTICE HALL dissenting.

On rehearing:

The defendants and amici curiae have raised constitutional questions in their briefs on rehearing. Defendants contend that the interpretation of Rule 26 (b) in the original opinion in this case constitutes a violation of Sec. 25, Article II of the Constitution of Colorado and of Sec. 1 of the Fourteenth Amendment to the Constitution of the United States, both of which prohibit deprivation of life, liberty or property without due process of law. The contention of defendants on this point is summarized in their brief as follows:

"To require disclosure, would deprive a defendant to a large extent of the value of that property and to deprive him of a right of 'liberty' of which the sovereign may not deprive the citizen without due process of law. In respect to the deprivation of property, a policy of insurance that must be disclosed is not as valuable as is a policy, the existence of which need not be disclosed. This has been brought out wherein it was shown that leverage may be exerted upon the insured Defendants and his insurance company to effect a higher settlement."

Amici curiae, eminent attorneys, who according to their statement, represent insurance companies which issue in excess of 50% of all liability policies written in Colorado, have also raised a number of constitutional questions. They argue that there has been a violation of due process, state and federal; equal protection of the

laws as guaranteed by the Fourteenth Amendment to the Federal Constitution; privileges and immunities in violation of the Fourteenth Amendment and of Article V, Sec. 25 of the Colorado Constitution; searches and seizures in violation of the Fourth Amendment of the Federal Constitution and Sec. 7, Article II of the Colorado Constitution. They finally argue that the ruling constitutes invasion by the judiciary of the province of the Legislature.

We have carefully examined the arguments and authorities set forth in the briefs and have considered the oral arguments of counsel which were offered at the hearing which was extended to all of counsel, including amici curiae, and we are of the opinion that all of these contentions are without merit. It seems to us doubtful in the extreme that the Supreme Court of the United States would conclude that this Court's construction of its own rule constitutes a violation of the provisions of the Constitution of the United States. Furthermore, these arguments do not, in our opinion, disclose any violations of the constitutional rights of either the insured or the insuror in the case at bar or any rights of other insurors not parties to this action.

We wish to point out, however, that although the ruling on these constitutional questions is on rehearing, the respondents raised the questions at the earliest possible time and there should not be a refusal to consider them based upon the fact that the determinations first appear on rehearing. The reason for this is that our original opinion was issued following a notice to respondents to show cause. Their response consisted, through no fault of theirs, of a motion to dismiss the complaint or petition. The respondents had anticipated filing an answer following disposition of their motion to dismiss (if it were denied). We announced our first opinion in the belief that the defendants had elected to stand on the motion to dismiss. As a result of this confusion, a hearing on the merits has been extended to the

respondents. This has consisted of a filing of briefs and the submission of oral arguments. All of this followed the granting of respondents' motion for rehearing.

The original opinion mistakenly stated that the defendants herein had refused to answer questions relative to "existence of liability insurance." The record indicates that the defendants refused to divulge the limits of their liability insurance policy. This was the only issue here presented. Defendants admitted the existence of liability insurance.

Some additional comments are indicated for the purpose of procedural clarification. In the opinion we treated the complaint herein as a petition seeking a writ of certiorari. The rule to show cause was made absolute. However, the records of this Court show that the following order was issued:

"On consideration of the pleadings and briefs herein, it is hereby ordered, adjudged and decreed that the rule to show cause heretofore and on, to-wit: - the sixth day of November, A.D. 1958 issued herein be, and it hereby is, made absolute.

"It is further ordered and adjudged that the defendants, the District Court of the County of Pueblo in the Tenth Judicial District and the Honorable John H. Marsalis one of the Judges thereof be, and they hereby are, commanded to rescind and revoke that certain order made and entered September 29, 1958, in civil action No. 39,428, entitled Mary V. Lucas and William E. Lucas, Sr., Plaintiffs, vs. George K. Moore and Grace Elaine Moore, defendants, lately pending in said court, denying plaintiffs' right to discover the insurance limits under the liability insurance policies owned by the said Moores at the time of the occurence of the automobile accident complained of. The defendants are further ordered and commanded to require said Moores to supply plaintiffs herein and in said action with the information requested in conformity with the opinion filed herein."

In their petition, petitioners requested that the

district court be directed to "expunge from the record" its previous order. Even though the rule was made absolute, this requested relief was not ordered. The order simply directed the trial court to "rescind and revoke its former order." It further directed that the court enter an order commanding the defendants to supply the requested information. The above order is an appropriate one in this type of proceeding. In other words, this Court has the authority to direct the district court to comply with its ruling and that in substance is the requirement of the above quoted order.

We have carefully considered the able and extensive arguments of counsel for defendants and of amici curiae and we are of the opinion that the original opinion as here modified should be adhered to and it is so ordered.

MR. JUSTICE FRANTZ specially concurring. MR. CHIEF JUSTICE KNAUSS, MR. JUSTICE SUTTON and MR. JUSTICE HALL dissenting.

MR. JUSTICE FRANTZ specially concurring:

Rule 26 (b) is as follows:

"Unless otherwise ordered by the court as provided by rule 30 (b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or *to the claim or defense of any other party,* including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis supplied.)

I believe stress should be placed upon that portion of the rule which provides for examination on any relevant

matter relating to the claim or defense of any other party as well as the claim or defense of the examining party. It furnishes the plumb-line for testing the asserted right to interrogate concerning the existence, and amount, of insurance.

Immediately an assured is involved in an accident covered by his insurance policy, he has in effect a claim against the insurance company. When the assured becomes party to a suit, the party examining him has the right, under Rule 26 (b), to interrogate him concerning his claim against the insurance company.

Thus, believing that the rule provides for an examination in the manner sought here, I specially concur in the majority opinion.

MR. JUSTICE SUTTON dissenting:

I respectfully dissent.

The majority opinion states that "The specific question for determination is whether the mentioned inquiry is 'relevant to the subject matter involved in the pending action' within the meaning of this rule, or whether relevancy as here used is restricted to evidence which is admissible at the trial or testimony which is reasonably calculated to lead to the discovery of admissible evidence." The majority conclude the former and I conclude that by reading the rule in its entirety, which by proper construction we should do, the latter conclusion is the applicable one. My reasons are:

(a) Rule 26 (b), R.C.P. Colo., clearly and unequivocally requires that "the testimony sought appears reasonably calculated to lead to the discovery of *admissible evidence*." (Emphasis supplied.) I cannot agree that knowing the amount of liability insurance leads to the discovery of any *admissible evidence* or to anything else relevant to the issues. It can only serve to force unjustified settlements before or during trial. The majority opinion admits that the evidence here sought is not admissible. Why then, as have some other courts,

do we grope for external and, as I believe, improper reasons to justify this invasion of privacy?

(b) Our Automobile Safety Responsibility Law, C.R.S. '53, 13-7-1, et seq., does not require anyone to carry public liability insurance and should not be construed to have that effect. In fact it not only fails to affirmatively require insurance coverage before accidents occur but also provides that security for the payment of damages in the form of money or securities (section 28) may be made after an accident. Thus insurance need never be secured even by one who has been involved in an accident. While it is true that *if* a person has insurance coverage the liability of the insurance carrier shall become absolute whenever loss or damage covered by such policy occurs (section 23), yet I point out that this provision does not permit a plaintiff to name the insurance company as a defendant. In fact section 23 sets forth expressly when the insurance carrier, there being insurance coverage, is not to be held liable to a *"judgment creditor."*

If the legislature so chooses it may declare the public policy of this state to require insurance coverage for all vehicles and drivers. It has not done so and this court has no power or right to invade the legislative field in this regard since that arm of government has already spoken.

The majority opinion proceeds on the false premise that the purpose of a driver or owner in carrying public liability insurance is to protect the public. I venture to suggest that human nature being what it is, the true purpose is to protect the insured from claims by injured parties which may be reduced to judgment. An examination of a modern liability insurance contract will disclose that its purpose is to defend and indemnify. Public liability insurance policies in Colorado are not issued "pursuant" to our Safety Responsibility Law and are not third party beneficiary contracts before judgment under

our statute. Authorities cited in this regard are not material to this matter.

In *Goheen v. Goheen* (1931), 9 N.J. Misc. 507, 154 Atl. 393, the court held that in a personal injury action plaintiff's interrogatories concerning insurance on defendant's automobiles were irrelevant and immaterial to the issue presented and ordered them stricken. This was because they would not lead to "competent evidence." I would apply the same rule here.

*People v. Fisher* (1957), 12 Ill. (2d) 231, 145 N.E. (2d) 588, relied upon by the majority opinion is a similar case to the one before us. There the court, with one justice dissenting, interpreted such interrogatories as seeking "relevant" information for a pending action. That of course is where I disagree with that opinion. In the *Fisher* case the Illinois court is careful to state that their statute requires " * * * certain minimum liability insurance coverage for motor vehicles * * *." I point out this is not a requirement of the Colorado Statute. The *Fisher* decision discusses the division of authority on this problem, citing several cases pro and con. It further states:

"There is a plausible ring to the argument in the McClure and Jeppesen cases that if the existence and amount of liability insurance must be disclosed, logic demands that every defendant must be required to disclose his financial resources. That argument is advanced in this case. But in our opinion it is answered by the statutory provisions that confer an interest in such a policy on every member of the public that is negligently injured, and by the unique characteristics of a liability insurance policy."

In Colorado a plaintiff does not have a statutory interest in a public liability policy.

I would follow the authorities which *Fisher* rejects because of reasons set forth in this dissent, and because based upon the different statutes prevailing in Illinois it is not precedent for our court.

In the absence of express legislation I am not prepared to say or intimate or hold that an injured party has an interest in a public liability policy or has the right to sue an insurance carrier direct — and that is the actual effect of the majority opinion, though it is careful not to go that far *yet*.

(c) The stance of protective benevolence assumed by the majority opinion clothes a plaintiff in warm winter garb but leaves a defendant nude or at least ill clothed before the frigid stares of his opponents and the public. He can have no modesty. His financial virtues are exposed to public gaze and possible rapacious seizure without proper regard to whether the act is legitimate; i.e., without due regard to his actual negligence. All because undue emphasis is placed upon the then known but inadmissible ability of the defendant to pay.

It seems to me that the decisions letting the foot in the door on this matter have long since wandered from the Hornbook premise that tort liability suits are to be based and tried upon whether the defendant was negligent — not how rich he or his insurance carrier may be, or whether he can respond in damages. This whole "new" concept which the majority now adopts as the "modern rule" not only ravishes cherished principles of law but can lead only to troubles as yet unforeseen for defendants in trying to compromise fairly and to a substantial raising of insurance rates.

The majority opinion before making the rule absolute finally states, "This will have a tendency to eliminate secrets, mysteries and surprises and should promote disposition of cases without a trial as well as results on the trial which are substantially just." I respectfully ask how can the existence *vel non* of public liability insurance create any justiciable secrets or mysteries or surprises? It has nothing to do with whether the defendant was negligent and should respond in damages, nor has it anything to do with the measure of damages. I then ask, why it should promote disposition of cases without

a trial? Clearly this is because it costs money to try lawsuits and it is common knowledge that insurance companies usually pay at least the cost of defending an action, even when there is slight chance of liability, just to avoid trying the case. Naturally that sort of case wouldn't go to trial anyway, and would not have been filed in the first place if the amount of insurance wasn't known or suspected. Thirdly, I ask why trial results will be "substantially just" when there is known insurance coverage and the implication that the opposite result must obtain where it is not known? By "substantially just" can only be meant that the plaintiff will receive a larger verdict or award where the amount of insurance coverage is known, but which fact may not be presented to the jury, than when it is not known.

Without impugning the motives of present able and conscientious counsel for plaintiffs in bringing this matter before us, I add the further objection that the majority opinion violates public policy. *People v. Fisher,* supra, approved by the majority opinion, states that one reason for forcing the disclosure of insurance coverage and amounts is so that the plaintiff's counsel will have in advance a realistic appraisal of his opponent so that he will know how diligently he must apply himself on behalf of his client.

It seems to me that this concept of a lawyer's duty to his client is a far cry from the historic and traditional ethics of the legal profession as taught in our law schools and as expressed in the lawyer's oath. An attorney who undertakes a case on behalf of a client is in duty bound to prosecute it with all his ability, skill and energy. If the cause is meritorious it should be pursued to a conclusion, if that is the client's desire; unwarranted claims should not be undertaken. I am sure that every member of the Bar of our state concurs that it is his duty to do his best possible work for his client and that the Bar itself will object to anything which **may lower its** standards and which might tend to justify a lawyer, who

is not cognizant of his duty, in only paying lip service to his client's cause unless he knows there is insurance coverage or the possibilities of being paid.

I would deny this broad inquiry *before judgment* under present law because it flies in the face of the express language of Rule 26 (b). I would further deny it upon the ground that it sanctions a public policy out of harmony with all our concepts of justice.

The motion to dismiss the Rule should be granted.

Mr. Chief Justice Knauss and Mr. Justice Hall concur in this dissent.

Mr. Chief Justice Knauss dissents upon the further ground that he believes our court has no right to determine this matter upon a petition for Writ of Mandamus.

Mr. Justice Hall dissenting:

I respectfully dissent from the majority opinion and in addition to the matters set forth in Mr. Justice Sutton's dissenting opinion, in which I join, wish to point out the following reasons for my dissent.

At the time of the commencement of this action, an original proceeding before this court, there was pending in the District Court of Pueblo County an action, No. 39,428, wherein Mary V. Lucas and William E. Lucas, Sr., were plaintiffs and George K. Moore and Grace Elaine Moore, *not parties to this proceeding,* were defendants. In Action No. 39,428 the plaintiffs had demanded information from the defendants on two questions: (1) Do you have liability insurance?; (2) What are the policy limits? Information was furnished as to the first question and refused as to the second, and after proper proceedings on September 29, 1958, John H. Marsalis, Judge of the District Court, sustained the defendants' contention that they were under no obligation to divulge the policy limits of their insurance and entered a formal and final order denying plaintiffs'

formal motion for an order directing defendants (Moores) " * * * to set forth the limits of liability under the liability insurance policy of defendants [Moores] upon the date of the collision * * *."

Following this order and on October 21, 1958, plaintiffs filed their complaint in this court, labelled: "COMPLAINT FOR A WRIT IN THE NATURE OF MANDAMUS" and named as defendants: (1) The District Court of the County of Pueblo in the Tenth Judicial District, and (2) the Honorable John H. Marsalis, one of the Judges thereof.

The real burden of plaintiffs' complaint herein is set forth in paragraph XII thereof:

"The order of Defendant District Court and Judge denying plaintiffs' right to secure answers to said questions was [1] *an abuse of the Court's discretion and* [2] *an act exceeding the Court's jurisdiction* in that under Rule 26(b), Colorado Rules of Civil Procedure, said questions and answers are relevant to the subject matter and proceedings involved in said civil action now pending." (Emphasis supplied.)

The relief requested is set forth in the prayer:

"WHEREFORE, plaintiffs pray that [1] this Honorable Court issue a *writ in the nature of a Writ of Mandamus commanding* the District Court of the 10th Judicial District in and for the County of Pueblo, State of Colorado, and the Honorable John H. Marsalis, one of the Judges thereof, *to expunge from the record in said Civil Action No. 39428* that certain order issued by the said Court and Judge on September 29, 1958, denying plaintiffs' right to discover the insurance limits under the liability insurance policies owned by the said Moores at the time of the occurrence of said collision; and, further, [2] that said District Court and said Judge thereof *be instructed* to require said Moores to supply plaintiffs with the information requested." (Emphasis supplied.)

On receipt of this complaint this court entered its order to show cause, as follows:

534

"You are hereby ordered and directed to appear in the Supreme Court of the State of Colorado within ten days from service hereof and answer in writing and show cause, if any you may or can have, *why the relief requested in the complaint of the plaintiffs herein should not be granted.*" (Emphasis supplied.)

The majority opinion has been announced in two parts, the first dated March 9, 1959, the second November 2, 1959. The March 9, 1959, part closes as follows:

"Therefore, we conclude that the rule to show cause heretofore issued should be made absolute, and it is so ordered."

In my humble opinion, making the rule absolute constituted a *MANDATE* of this court that:

" * * * the District Court * * * and the Honorable John H. Marsalis * * * expunge from the record in said Civil Action No. 39,428 that certain order * * * denying plaintiffs' right to discover the insurance limits under the liability insurance policies owned by the said Moores * * * and said Judge thereof be instructed to require said Moores to supply plaintiffs with the information requested."

In part two of the majority opinion, it is stated:

"However, the records of this Court show that the following order was issued:

" 'On consideration of the pleadings and briefs herein, it is hereby ordered, adjudged and decreed that the rule to show cause heretofore and on, to-wit: - the sixth day of November, A.D. 1958 issued herein be, and hereby is, made absolute.

" 'It is further ordered and adjudged that the defendants, the District Court of the County of Pueblo in the Tenth Judicial District and the Honorable John H. Marsalis one of the Judges thereof be, and they hereby are, *commanded to rescind and revoke that certain order* made and entered September 29, 1958, in civil action No. 39,428, entitled Mary V. Lucas and William E. Lucas, Sr., Plaintiffs, vs. George K. Moore and Grace Elaine

Moore, Defendants, lately pending in said court, denying plaintiffs' right to discover the insurance limits under the liability insurance policies owned by the said Moores at the time of the occurrence of the automobile accident complained of. The defendants are further ordered and commanded to require said Moores to supply plaintiffs herein and in said action with the information requested in conformity with the opinion filed herein.'" (Emphasis supplied.)

Lest there be any misunderstanding, I point out that this order was promulgated by the clerk of this court and entered on March 8, 1959, all of which was unknown to the author of this dissent until a few days ago, and so far as the author of this dissent knows was never presented to this court for approval or disapproval. Surely it must be conceded that the clerk of this court has no authority to "order, adjudge or decree" anything. If that order grants anything more, less or different than the judgment of this court, as expressed in the majority opinion, it is a nullity and abortive.

Plaintiffs' counsel and the majority of this court have divergent views as to the nature of this proceeding. Counsel says it is a complaint for "a writ in the nature of mandamus." At the time part one of the majority opinion was released, it appears that no conclusion had been reached by the majority as to whether it was mandamus or certiorari, for the majority opinion states:

"We shall treat this complaint as if it were a petition seeking the issuance of a writ of *mandamus or certiorari* as the same existed at common law. \* \* \*." (Emphasis supplied.)

Further confusion is manifest by the statement in part two of the majority opinion wherein it is stated, contrary to the above statement:

"In our opinion [part one] we treated the complaint herein as a petition seeking a writ of certiorari." (No mention is made of mandamus.)

Adding to the confusion, making the rule absolute

constituted a mandate (the product of a mandamus action) directed to the district judge. Even the clerk's order referred to by the majority, if it were valid, is a mandate.

The majority opinion, contrary to the expressed understanding of all counsel in the matter, states that this is not a proceeding under Rule 106 for the reason that:

"This rule does not apply to original proceedings."

Such statement runs contrary to dozens of decisions of this court wherein original proceedings brought in district courts and this court pursuant to this rule have been recognized, sanctioned and approved.

In *Swift v. Smith,* 119 Colo. 126, 201 P. (2d) 609, referred to in the majority opinion, this court stated:

"This is an original proceeding in the nature of certiorari brought under rule 106 (a) (4), R.C.P. Colo., by Eleanor Swift and others, against Osmer E. Smith, district judge, and other officials, to determine whether the latter abused their discretion in granting orders for immediate possession of certain premises belonging to Swift and others to be used for highway purposes. We issued a rule to show cause, whereupon an answer was filed, and the record in the district court was certified and filed herein."

In *Town of Glendale v. City and County of Denver,* 137 Colo. 188, 322 P. (2d) 1053, also referred to in the majority opinion, this court, in a unanimous en banc decision, quoting from *Potashnik v. Public Service Company of Colorado,* 126 Colo. 98, 247 P. (2d) 137, stated:

" 'That a writ of error to review an interlocutory order of the district court will not lie is conceded. That an original proceeding in the nature of certiorari under Rule 106, R.C.P. Colo., when directed to an endangered, fundamentally substantive and substantial right, is maintainable and recognized as a proper remedy is settled. *Swift v. Smith,* 119 Colo. 126, 201 P. (2d) 609.' "

As recently as last July, this court, in *City and County of Denver v. District Court,* 140 Colo. 1, 342 P. (2d)

648, No. 18,876, recognized the propriety of bringing an original proceeding in the nature of certiorari under Rule 106.

Rule 106 precludes this court from granting the relief requested herein. The rule states:

" * * * Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion."

The opinion of the majority removing this case from those covered by the rule accomplishes nothing, for the rule only states the well established principles of law.

" * * * The principal office of the writ is to control the action of an inferior tribunal and to keep it within its jurisdiction; * * *." — 14 C.J.S. 122, §2 a.

"The office of a certiorari is to bring up the proceedings of the court below for examination, that they may be affirmed or quashed, and not to enforce any rights growing out of those proceedings, its purpose not being to compel performance." — 14 C.J.S. 123, §2 a.

In *County Court v. People,* 55 Colo. 258, 133 Pac. 752, this court said:

" * * * It is elementary that when a writ of this character [certiorari] is granted upon a proper petition, and the inferior tribunal certifies its record in response thereto, the limit of the power of the reviewing court is to ascertain from that record alone whether the inferior tribunal regularly pursued its authority, and thereupon pronounce judgment accordingly. §337 Code Civil Proceed., 1908, *County Court v. Eagle Rock Co.,* 50 Colo. 365, 115 Pac. 706, *Morefield v. Koehn,* 53 Colo. 367, 127 Pac. 234."

In *Bulger v. People,* 61 Colo. 187, 156 Pac. 800, this court said:

"By §3 of art. VI of the Constitution this court has power to issue writs of *certiorari* and other writs therein enumerated. Those writs, however, are the common law writs, and under our decisions when a writ of *certiorari* is issued by this court it is limited solely to the question

of the jurisdiction of the inferior tribunal. *Leppel v. District Court*, 33 Colo. 24, 27, 78 Pac. 682; *People v. District Court,* Idem, 293, 80 Pac. 908; *People v. District Court,* 30 Colo. 488, 71 Pac. 388."

In *Denver v. People ex rel.,* 129 Colo. 41, 266 P. (2d) 1105, this court said:

"On review upon certiorari, under Rule 106 (4), R.C.P. Colo., courts are limited in their inquiry as to whether the Commission had exceeded its jurisdiction, had abused its discretion, or had regularly pursued its authority. *Public Utilities Commission v. Town of Erie,* 92 Colo. 151, 18 Pac. (2d) 906."

In *People v. District Court,* 72 Colo. 525, 211 Pac. 626, this court said:

"We do not see that there was lack of jurisdiction. The court had jurisdiction of the whole case and was, of course, the only court that had power to hear and determine the motion. Having that power it necessarily had power to determine the question either way — to grant, or deny — and it follows that its decision however erroneous was not in excess of jurisdiction. The motion was not upon any point involving discretion, therefore, since certiorari will lie in this state only for excess of jurisdiction or great abuse of discretion, the action of the court is no more than error and certiorari is not the remedy. *Dilliard v. State Board,* 69 Colo. 575, 196 Pac. 866."

In *Medical Board v. Spears,* 79 Colo. 588, 247 Pac. 563, this court said:

" * * * The inferior tribunal unquestionably had jurisdiction. It did not abuse its discretion or fail regularly to pursue its authority. Neither the district court nor this court may enter upon an investigation of the merits, or inquire if the board made a mistake in its findings of fact, or erred in its conclusions upon the facts. * * *."

The majority opinion states:

"We have concluded that the matter should be deter-

mined on its merits and that the motion to dismiss should be denied. * * *.

 * * *

"We conclude that the complaint should be entertained and that this question [whether defendants should be required to disclose policy limits of their insurance] should be determined on its merits."

In proceeding to determine the matter on the merits, pursuant to said statements, the majority proceeded contrary to repeated pronouncements of this court and without sanction or precedent.

The purpose of certiorari is stated in a general way in 10 Am. Jur. 524, §3:

" * * * According to the weight of authority, where the scope of the writ has not been narrowed by statute, its office extends to the review of all questions of jurisdiction, power, and authority of the inferior tribunal to do the action complained of, and all questions of irregularity in the proceedings, that is, of the question whether the inferior tribunal has kept within the boundaries prescribed by the express terms of the statute law or well-settled principles of the common law.

"The judgment of the court in certiorari affects only the validity of the record. That is, its judgment determines that the record is valid or invalid. Moreover, on a certiorari, in the absence of statutory enlargement, only the external validity of the proceedings had in the lower court may be examined by the superior court under its supervisory jurisdiction. *The supervisory jurisdiction of the court cannot be exercised in order to review the judgment as to its intrinsic correctness, either upon the law or the facts of the case.*" (Emphasis supplied.)

In *Civil Service Com. v. Cummings*, 83 Colo. 379, 265 Pac. 687, this court said:

"There is another reason why the decree should be set aside even if certiorari is the appropriate remedy. It is established law in this state, as it is generally in

this country, that certiorari is an extraordinary remedy and is restricted in its inquiry to jurisdictional questions and, under our Code of Procedure, to manifest abuse of discretion, which we have held to mean a failure of a court regularly to pursue its authority. It is not a flexible writ. All that can be done under it is to quash or refuse to quash the proceeding complained of. 11 C.J. pp. 88, 89, §2. No rights growing out of such proceedings can be enforced. * * *."

In *Carpenter v. People ex rel.,* 112 Colo. 151, 148 P. (2d) 371, this court said:

" * * * It is clearly settled in this jurisdiction that the only questions to be determined by certiorari are the existence of jurisdiction and the absence of arbitrary or capricious action or abuse of discretion. *State Civil Service Com. v. Cummings,* 83 Colo. 379, 265 Pac. 687; *County Court v. People ex rel.,* 55 Colo. 258, 133 Pac. 752; *Board v. Handley,* 105 Colo. 180, 95 P. (2d) 823."

In *Lindsley v. Denver,* 69 Colo. 562, 196 Pac. 859, this court said:

"In a review on certiorari the only question to be considered is that of jurisdiction. Whether the court acted arbitrarily, or justly and wisely, is wholly beside the mark. * * *."

In *Leonhart v. District Court,* 138 Colo. 1, 329 P. (2d) 781, this court said:

"Corrective measures are not within the sweep and coverage of prohibition; correction of error is the function of a writ of error. A trial court has the power to render a right as well as a wrong decision. 'Prohibition may never be used to restrain a trial court having jurisdiction of the parties and of the subject matter from proceeding to a final conclusion. Nor may it be used to restrain a trial court from committing error in deciding a question properly before it; it may not be used in lieu of a writ of error.' *Prinster et al. v. District Court,* decided May 19, 1958, 137 Colo. 393, 325 P. (2d) 938."

The most recent pronouncement of this court, made

October 14, 1959, in Case No. 18,196, *City of Aurora v. Congregation Beth Medrosh Hagodol,* 140 Colo. 462, 345, P. (2d) 385, runs contra the majority opinion. This court in a unanimous decision, one justice not participating, said:

"Questions of jurisdiction or excess thereof do not encompass consideration of the merits of a cause. One may, for instance, assert a meritorious claim before the wrong tribunal, and a higher tribunal may enter prohibitory orders against further proceeding without in any manner affecting the integrity of the claim. *People v. First Judicial District,* 54 Colo. 237, 130 Pac. 324; *State Board v. Noble,* 65 Colo. 410, 177 Pac. 141; *People v. Morley,* 72 Colo. 421, 211 Pac. 643; *Doran v. State Board,* 78 Colo. 153, 240 Pac. 335."

There is good reason why in original proceedings in prohibition, mandamus and certiorari the court determines only the question of jurisdiction and avoids determination of the merits. This court does not have the litigants before it; it cannot determine their rights or duties — we do have the inferior tribunal before us and under our supervisory powers we can determine questions concerning its jurisdiction.

As pointed out above, the Moores are not before this court; they have never been served with any process or notice. In Case No. 39,428 in the District Court of Pueblo County they were parties, as were the Lucases. The parties had their day in court; they had their rights and duties with reference to answering questions adjudicated by a constitutional court of unquestioned jurisdiction, presided over by a duly elected judge of unquestioned ability and impartiality; the question was resolved on the motion of Lucases, who invoked the aid of the judge and requested that he exercise his jurisdiction and proceed, and proceed he did, heard arguments, took the matter under advisement and finally ruled on the motion (albeit distastefully to Lucases) and judicially

determined that Moores need not answer; he determined the question "on its merits."

Now this court redetermines this identical question "on its merits" and without having before it two of the parties to the district court proceedings. Such determination in my humble opinion is in violation of both federal and state constitutional guaranties of due process and is therefore void for want of jurisdiction.

The following quotation from 30A Am. Jur. 180, §26, may seem trite:

"It is a fundamental doctrine of the law that a party to be affected by a personal judgment must have a day in court, or an opportunity to be heard. In this connection, it is sometimes declared broadly that every man is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision on the question. The judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights, and is not entitled to respect in any other tribunal. * * *."

In 14 C.J.S. 295, §152, it is said:

"Unless authorized by constitutional or statutory provision, the court, *on certiorari, cannot review the cause on its merits.*" (Emphasis supplied.)

At page 319, §174, it is said:

" * * * a reviewing court has no power to annul, modify, or revoke any action of the inferior tribunal where it has regularly pursued its authority, no matter how erroneous the decision may be. Also, it has been held that the reviewing court has no power to enter a judgment on the merits of the controversy, nor to direct the respondent to enter any particular order or judgment. * * *."

In *Ruth v. United States Fidelity and Guaranty Co.,* 83 So. (2d) 796 (Fla.), the court said:

"It also follows that appellee's contention that the earlier certiorari proceedings referred to 'was actually an

appeal from a final judgment' and that the denial of the requested writ amounted to an affirmance thereof by this court is without legal efficacy. *This court neither affirms nor reverses* the judgment upon common-law writ of certiorari." (Emphasis supplied.)

In *Byrnes v. Retirement Board*, 399 Ill. App. 55, 89 N.E. (2d) 59, the plaintiff had filed with the board her claim arising out of the death of her husband. The board denied the claim, whereupon she filed a petition in the Superior Court in common law certiorari. The Superior Court quashed the record of the board's proceedings, from which order respondent appealed to the Court of Appeals, which court found that the Superior Court had exceeded its jurisdiction and reversed the judgment. The court said:

"It must be conceded that the Board had jurisdiction, that it proceeded according to law, that it acted on evidence and that the evidence fairly tends to support its action. In a common law certiorari proceeding these are the only circumstances which the court may pass on."

In *High Line Canal Co. v. People ex rel.*, 8 Colo. App. 246, that court had for consideration the propriety of an order of the district court issuing a writ of mandamus. In holding such action improper, the court stated:

" * * * The courts will not interfere [by mandamus] wherever it is apparent the interests of third parties, who are not before the court, are necessarily involved. * * *.

\* \* \*

" * * * Rights of third persons were shown to be involved, and those persons were not before the court, and a judgment respecting Eli Allen's rights, or those of his grantees, might operate to their prejudice. * * *. The reversal is not put on this basis, but it is offered as a suggestion to illustrate the difficulties which might intervene if in this sort of a proceeding the court should undertake to adjudicate the rights conferred by the Bomberger contract."

See, also, Colo. Assn. v. Uncompahgre Co., 134 Colo. 131, 300 P. (2d) 968.

In *Prinster v. District Court*, 137 Colo. 393, 325 P. (2d) 938, which was an original proceeding in prohibition, this court said:

"Plaintiffs in the action before Judge Hughes, as well as the defendants who have decreed rights, who enjoyed favorable rulings at the hands of Judge Hughes, are not parties to the proceeding before us and, not being before us, we are in no position to adjudicate their rights."

The majority opinion of this court relies heavily on our statute dealing with motor vehicles and liability insurance as a basis for requiring that the requested information be given. There is no statutory requirement that any operator of a motor vehicle carry insurance. Whether to do so or not is entirely optional. The majority, in speaking of the so-called Automobile Safety Responsibility Act, states:

" * * * Its ultimate object is to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles. * * *."

It would seem that if this were the ultimate purpose the legislature would have required operators to carry insurance so that the "ultimate purpose" might have some reasonable chance of becoming a reality. In seeking to determine the purpose or object of legislation, some consideration should be given to the purposes as expressed by the legislature in adopting the Act. Chapter 163, Session Laws 1935 (now C.R.S., 13-7-1, et seq.) states purposes of the Act quite foreign to those assigned by the majority opinion:

"AN ACT
RELATING TO THE OPERATION OF MOTOR AND OTHER VEHICLES UPON THE HIGHWAYS OF THE STATE; TO ELIMINATE THE RECKLESS AND IRRESPONSIBLE DRIVERS OF MOTOR VEHICLES FROM THE HIGHWAYS; TO PROVIDE FOR PROOF OF FINANCIAL RESPONSIBILITY BY OWNERS

AND OPERATORS OF MOTOR AND OTHER VEHICLES; TO PROVIDE FOR THE SUSPENSION AND REVOCATION OF OPERATORS' AND CHAUFFEURS' LICENSES AND CERTIFICATES OF REGISTRATION; PROVIDING FOR ENFORCEMENT OF THIS ACT AND PENALTIES FOR THE VIOLATION HEREOF."

In further discussing the insurance feature, the majority opinion states:

"It is also conceivable that although a defendant may have liability insurance he may fail to properly notify his insurance carrier. This neglect would seriously prejudice the plaintiff under the Safety Responsibility Law. Thus it is in the interest of the plaintiff to ascertain all of the facts pertaining to liability insurance coverage, including whether there has been notice to the carrier."

This statement, contained in part one of the majority opinion, it would seem is predicated on the erroneous statement contained in part one of the opinion, corrected in part two:

" * * * questions were propounded relative to the existence of liability insurance * * * the defendants refused to answer. * * *."

Understandably, insurance companies want to be notified of the facts of an accident whereby they might have some liability under their policies and place provisions therein requiring notice. Plaintiffs were furnished with information as to the fact of insurance, presumably all of the information desired except the policy limits, and as a consequence thereof plaintiffs were in a position to give the required notice so that they would not be "seriously prejudiced" by failing to give notice. It would be somewhat presumptuous and fatuous for Lucases to notify Moores' insurance carrier of the limits of the policy that it itself had issued.

As a consequence of this decision, the Honorable John H. Marsalis is confronted with a mandate of this court to "expunge" from the court records an order which dis-

posed of a motion which was filed by attorneys for the plaintiffs in the case then pending before him. If that mandate is carried out then there would still remain undisposed of the motion.

Strange indeed to me, and I believe to the law, that a duly elected constitutional judicial official, called upon to rule upon a motion filed by plaintiff, in pursuance of his sworn duty, sets the matter for argument, hears arguments and rules on the motion, should now in a proceeding of this type, a proceeding which plaintiffs say is "in the nature of mandamus" and which the majority pronounces to be certiorari, be directed to *expunge* — to destroy — to erase — to blot out — to obliterate such record so made and to change his ruling on the motion pending. To such I do not subscribe.

MR. CHIEF JUSTICE KNAUSS and MR. JUSTICE SUTTON have authorized me to state that they join in this dissent.